Consuelo FREEMAN, Appellant,

v.

The STATE of Texas.

No. 2156–01.

Court of Criminal Appeals of Texas.

Nov. 5, 2003.

Rehearing Denied Feb. 4, 2004.

Yolanda Gutierrez Burns, Corpus Christi, for Appellant.

Douglas K. Norman, Assistant District Attorney, Corpus Christi, Matthew Paul, State's Attorney, Austin, for State.

*OPINION*

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., WOMACK, KEASLER, HOLCOMB and COCHRAN, JJ., joined.

In this case, we decide that the record does not support the decision of the Court of Appeals on an ineffective assistance of counsel claim that appellant raised for the first time on direct appeal.

Appellant raised several ineffective assistance of counsel claims for the first time on direct appeal without having developed a record in the trial court during the trial or during a motion for new trial hearing for the purpose of establishing these claims. In a 2–1 decision, the Court of Appeals held that appellant's trial counsel was ineffective for failing to file a motion to recuse the trial judge because of comments the trial judge made which appellant claimed raised the issue of the trial judge's impartiality. *See Freeman v. State*, No. 13–98–587–CR slip op. at 7 (Tex.

App.-Corpus Christi, delivered August 16, 2001) (nonpublished). The dissenting opinion claimed that, in the absence of a more fully developed record, the presumption that counsel's conduct was reasonable was not overcome. *See Freeman*, slip op. at 1–2 (Hill, J., dissenting); *see also Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984) (counsel's conduct presumed reasonable).

We exercised our discretionary authority to review this decision. The sole ground upon which we granted the State's discretionary review petition states:

Did the Court of Appeals err when it effectively held that the failure to seek recusal of the trial judge was *per se* ineffective assistance of counsel as a matter of law, in conflict with the dissenting opinion, with another court of appeals, and on an important question of state and federal law that has not been, but should be, settled by the Court of Criminal Appeals?

We have held several times that in cases like this "the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel." *See, e.g., Thompson v. State*, 9 S.W.3d 808, 813–14 (Tex.Cr.App.1999). The United States Supreme Court generally agrees. *See Massaro v. United States*, 538 U.S. 500, ——, 123 S.Ct. 1690, 1694, 155 L.Ed.2d 714 (2003) (when ineffective assistance of counsel claim is raised on direct appeal, "appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose").

The record in this case is insufficient to support the conclusion reached by the Court of Appeals on the ineffective assistance of counsel claim it addressed because appellant did not develop a record in the

trial court for the purpose of establishing this claim. *See Thompson,* 9 S.W.3d at 815. The Supreme Court in *dicta* did state in *Massaro* that some ineffective assistance of counsel cases may be disposed of on direct appeal where "trial counsel's ineffectiveness is so apparent from the record." *See Massaro,* 538 U.S. at ——, 123 S.Ct. at 1696. Without more guidance from the Supreme Court, however, we decline to hold that this is such a case. *See Freeman,* slip op. at 1–2 (Hill, J., dissenting).

The judgment of the Court of Appeals is reversed and the case is remanded there for further proceedings consistent with this opinion.

MEYERS, J., filed a dissenting opinion in which PRICE, J., joined.

PRICE, J., filed a dissenting opinion in which MEYERS, and JOHNSON, JJ., joined.

MEYERS, J., dissenting in which PRICE, J., joined.

The issue in this case is whether the Court of Appeals erred by holding that the failure to seek recusal of the trial judge was ineffective assistance of counsel. The majority's opinion, however, fails to address this issue and instead concludes that the Court of Appeals erred by addressing the merits of a claim that was raised for the first time on direct appeal. The State doesn't ask us to say that the Court of Appeals erred in addressing this point, only that it was wrong in holding that it was *per se* ineffective assistance of counsel to fail to seek recusal. In fact, in its brief, the State presents interesting arguments concerning whether this type of error could be *per se* ineffective assistance of

counsel. As indicated by both the opinion of the Court of Appeals and the dissenting opinion by Justice Hill, this case was well briefed and could properly be answered on direct appeal. Additionally, Judge Price's dissenting opinion actually addresses the ground for review brought by the State. Why don't we just improvidently grant this case if we are not going to answer the question that was asked? Because the majority resolves this case without considering the ground for review which was granted by this Court, I respectfully dissent.

PRICE, J., dissenting which MEYERS, and JOHNSON, JJ., joined.

The appellant was charged with retaliation for threatening witnesses who were to testify at her son's community supervision revocation hearing. The trial judge who presided over the revocation hearing also presided over her trial and made several comments on the record about his prior involvement in the case.[1] The appellant's trial counsel did not file a motion to recuse the trial judge. On direct appeal, the Court of Appeals held that trial counsel provided ineffective assistance of counsel in failing to file a motion to recuse the trial judge. *Freeman v. State,* No. 13–98–587–CR (Tex.App.-Corpus Christi Aug. 16, 2001) (not designated for publication). Today the Court summarily concludes that the record does not support the Court of Appeals's decision. Because I believe that the record was adequate and that there was no *reasonable* trial strategy for the attorney's failure to file a motion to recuse the trial judge in this case, I dissent.

### I. Facts

During the appellant's son's community supervision revocation hearing, the trial

---

1. The trial judge who presided over the appellant's case no longer presides over the 347th District Court in Nueces County.

judge noticed that two witnesses seemed reluctant to testify against the appellant's son. The trial judge pulled the witnesses aside and questioned them about their reluctance to testify. During the questioning, the witnesses said that the appellant threatened to retaliate against them if they testified against her son. The trial judge notified the proper state authorities who fully investigated matter. It is not clear from the record what, if any, further disciplinary measures the trial judge took to prevent further disruption of the revocation hearing.

On April 20, 1998, authorities arrested the appellant on a warrant alleging retaliation. The warrant was issued by a judge other than the one who presided over the revocation hearing. Later, the appellant was indicted. The appellant's bond was set at $100,000, again by a different judge. The appellant completed an affidavit of indigency, and trial counsel was appointed to her. At a pretrial hearing, in which the same trial judge from the revocation hearing presided, the appellant's trial counsel discussed a motion to request notice of intent to offer extraneous offenses and a motion for reconsideration of bond reduction. No documentation regarding the appellant's financial situation was presented to the trial court during this pretrial hearing to support the request for a bond reduction. Although the transcript is devoid of any formal motion or order in that hearing, the trial court states that the motion for a bond reduction was denied. The appellant did not make bond.

The case was assigned to the trial judge who had presided over the appellant's son's revocation hearing. During another pretrial hearing, the trial judge explained to the appellant's counsel the sequence of events that led to the appellant's indictment.

The Court:—well, let me tell you how it all started, if you want to know. Her son was accused of, I think, assault.

Ms. Cable [State's attorney]: Robbery.

The Court: Robbery?

Ms. Cable: Robbery. And he had a Motion to Revoke alleging assault.

The Court: Okay. And there were two women involved who later refused to testify. And I said: Well, I wonder why anybody got beat up that bad, to make it a felony and wouldn't testify? So I asked that the women be brought up and, according to them, they were forced or threatened not to testify. That's the way it turned out. So that's what led to this Indictment.

Mr. George [Appellant's attorney]: To this Indictment?

The Court: Right. And we had a hearing after she was placed in the jail. I don't know if I found her in contempt, but she kept interrupting the hearing, I believe. And then there was a—I don't show any psychological testing at all.

Mr. George: Okay.

The Court: And there may not have been one, but that's what led to this. And then we had some testimony under oath by one or two of the women.

Ms. Cable: Two women.

The Court: Two women, testifying about the threats, and the father of one of them.

Mr. George: Actually, that's the testimony that I was seeking, Your Honor.

The Court: All right.

Ms. Cable: That was within the Motion to Revoke [the appellant's son's community supervision], Judge.

When the appellant requested a bond reduction or the option of house arrest, the trial judge responded to the requests using his own knowledge of the facts gained from prior interactions with the appellant,

rather than using the arguments presented by the appellant during the hearing.

The Court: Well, you understand that here is a judge looking at a woman who is accused of retaliation. And I get a letter dated May 20—or at least that's when we got it—and she speaks of how she's been harassed for 25 years. She kept quiet, "but then this time I will speak out and defend me and my family."

I think this woman is going to go back to why she was placed in here. She was accused of going to the victim and saying: You better not testify because here is what's going to happen to you.

I'm not saying you are guilty ma'am. I'm saying that that's what they're saying. Now, a jury can otherwise say: You know what, Judge? They are wrong; let this lady go.

But it's not up to me. I don't file charges, but I'm the one that suspects that there was something wrong going on and, I think, halfway approved it. Because when they came, he said: "I do want to testify, Judge, but she's the one that threatened me not to testify."

The trial judge made several references to a letter written by the appellant. The handwritten letter, addressed to the judge who signed the appellant's bond order, was sent by the appellant before she was represented by counsel. In that letter, she requested a bond reduction and also complained of twenty-five years of police harassment. In her letter, the appellant listed the names of judges, the Chief Investigator of the Nueces County District Attorney's Office, and three Corpus Christi police officers, people whom she said had harassed her. The trial judge made reference to these individuals and predicted on the record that the city and county would have to deal continually with the appellant. The trial judge mocked the appellant and her allegations. He predicted that the appellant would continue to cause disruptions.

The Court: And this [letter] speaks of some kinds of slander. I have a feeling she is going to do something against the people who are going to be testifying against her. She speaks of police harassment—all this stuff. But Judge Harville? Somehow she is going to get Judge Harville involved. She's always a bad—I don't know why thinks [sic]—Mr. Wade? I have a feeling this lady is going to goLeslie Pointer. Bill May. Ray Rivera. Lewenski—not Monica. (General laughter) And Sgt. Starr—I have a feeling all these people are going to have to put up with [the defendant]. I think she needs to be tried and if she is not guilty she'll walk away and we may even apologize to her. But I don't think anything has changed. In fact, I think its worsened.

As part of her *pro se* request for a bond reduction, the appellant told the judge that "it w[ould] be nationwide news" and she hoped "their bonds . . . will be bigger than mine." In large print across the top of the page, the words "slander case" appeared. The trial judge who presided over the appellant's case made many references to this letter.

At the same hearing, the attorneys and trial judge discussed the appellant's mental competency to stand trial. The trial judge and the State's attorney explained the situation to the appellant's trial counsel.

Mr. George [Appellant's attorney]: . . . when I looked in the court file to try to get updated on what had occurred, it looked like there might have been an entry concerning some testing that was ordered.

The Court: Testing? . . . Oh, psychiatric?

Mr. George: Right.

The Court: There could have been.

Mr. George: And that was one of the questions, as to whether—you know, I'm not sure whatever happened with that or if anything ever did.

Ms. Cable [State's Attorney]: I don't think the Court ever ordered it—there may have been some question of her not receiving some medication possibly something like that in the jail. But I don't think there was [sic] psychiatric ordered by the Court.

No formal motion requesting a psychiatric evaluation was ever made. In addition to the statements at the pretrial hearing, the appellant explained under the "employer" section of her affidavit for indigency that she suffers from "mental disorder [sic] also anxiety attacks, 2 bruis[illegible]."

The trial judge never offered to recuse himself nor did the trial judge ask the appellant's counsel about a motion to recuse. The guilt phase of the appellant's trial proceeded without further comments from the trial judge, but at the sentencing phase, the trial judge stated that "[i]n fact, before even this defendant was charged, felt [sic] that there was something going on as to why the witnesses were reluctant to testify. Then the court heard evidence as to why. I agree with the State that the defendant should serve time." The State asked for a maximum sentence of ten years confinement; the appellant's attorney requested community supervision and assignment to a community supervision officer who handled cases with mentally ill probationers. The trial judge sentenced the appellant to five years' confinement with a $1,000 fine.

On direct appeal, the appellant complained that her counsel had been ineffective for failing to file a motion to recuse the trial judge. The Court of Appeals held that, under the unusual circumstances of this case, trial counsel's failure to move for to recuse the trial judge was ineffective assistance as a matter of law because no objectively reasonable strategy existed for his failing to do so. *Freeman v. State*, No. 13–98–587–CR, slip op. at 7. One justice dissented. He said that the majority made a good case for recusal of the trial judge. He disagreed with the majority's conclusion that the there was no reasonable trial strategy to support trial counsel's inaction. He suggested two reasons: (1) counsel could have had confidence in the integrity of the trial judge and his ability to be fair; and (2) counsel might have been concerned about the ability or temperament of a judge who might be assigned to hear the case in the event that the motion was successful. *Id.* at 10–11.

The State filed a petition for discretionary review, which we granted.[2] The State argues that recusal in this case was inappropriate because the trial judge's pretrial involvement did not create a reasonable doubt about his impartiality. The State also argues that nothing in the record refutes the presumption that trial counsel possessed a reasonable trial strategy in failing to seek recusal. The State does not challenge the Court of Appeals's holding regarding the prejudice prong of the ineffective assistance of counsel analysis.

The appellant responds that the comments made by the trial judge at the pre-

---

**2.** The exact ground on which we granted review is: "Did the Court of Appeals err when it effectively held that the failure to seek recusal of the trial judge was *per se* ineffective assistance of counsel as a matter of law, in conflict with the dissenting opinion, with another court of appeals, and on an important question of state and federal law that has not been, but should be decided by the Court of Criminal Appeals?"

trial hearing, the questioning of the witnesses by the trial judge before the State investigated the matter, and the fact that the trial judge was a potential witness in the State's case gave trial counsel more than adequate notice of the grounds for recusal. She also says that trial counsel's failure to file a motion to recuse the trial judge fell below an objective standard of reasonableness.

## II. Analysis

In *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) the Supreme Court articulated a two-prong test to be used when analyzing a claim of ineffective assistance of counsel. To have her conviction reversed on the grounds of ineffective assistance of counsel, an appellant has the burden of proving by a preponderance of the evidence that (1) counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the appellant. *Id.* at 687, 104 S.Ct. 2052. Unless the appellant makes both showings, it cannot be said that her conviction is rendered unreliable by a breakdown in the adversarial process. *Ibid.* In *Hernandez v. State,* this Court adopted the *Strickland* two-prong test for criminal cases in Texas. *Hernandez v. State,* 726 S.W.2d 53 (Tex. Crim.App.1986).

Our review of counsel's performance must be highly deferential. *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. There is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance, and the defendant must overcome the presumption *Ibid.* We determine the reasonableness of counsel's challenged conduct in context, and view it as of the time of counsel's conduct. *Ibid.*

We have said that we commonly assume a strategic motive if any can be imagined; and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it. *Bone v. State,* 77 S.W.3d 828, 833 n. 13 (Tex.Crim.App.2002) (quoting *Garcia v. State,* 57 S.W.3d 436, 440 (Tex. Crim.App.2001)). The policy behind this course is that "[i]ntensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. This standard balances the protection of these important policy interests with the protection of each defendant's fundamental Sixth Amendment rights.

As a result, we have said that the record on direct appeal is *generally* inadequate to show that counsel's conduct fell below an objectively reasonable standard of performance, and the better course is to pursue the claim in habeas proceedings. *Bone,* 77 S.W.3d at 833; *Thompson,* 9 S.W.3d 808, 813 (Tex.Crim.App.1999).

In fact, the United States Supreme Court has said recently much the same thing in a different context. In *Massaro v. United States,* 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003), the Supreme Court held that there is no procedural default for failure to raise an ineffective assistance of counsel claim on direct appeal. *Id.,* at 1693. Among the reasons for preferring that these claims be brought in habeas proceedings, the Court said the trial record is not developed precisely for the purpose of preserving and litigating these claims. As a result, the Court said, the trial record is often incomplete and inadequate to resolve these claims. *Id.,* at 1694.

Even so, the Court did not hold that there claims must be brought in habeas proceedings. But the Supreme Court also

said that cases exist in which "counsel's ineffectiveness is so apparent from the record that appellate counsel will consider it advisable to raise the issue on direct appeal." *Id.*, at 1696. The Court even noted that there may be instances when an appellate Court will review it *sua sponte*. *Ibid.*

When no reasonable trial strategy could justify the trial counsel's conduct, the counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as she did. *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052.

### III. Application

#### A. Recusal

First I will address the State's argument that recusal was not appropriate in this case. The State argues that recusal is not appropriate in this case because the trial judge's pretrial involvement in the case did not create a reasonable doubt about his impartiality.[3]

The State cites the test found in *Kemp v. State,* 846 S.W.2d 289, 305 (Tex.Crim. App.1992). In *Kemp,* the trial judge issued an arrest warrant for the defendant and presided over pretrial evidentiary hearings. This Court stated that "[t]he mere fact that a trial judge issued a defendant's search or arrest warrant, alone, does not establish bias against that defendant in a subsequent proceeding" because judges routinely performs these duties. *Id.*, at 306. We said that the test to establish bias is whether "a reasonable man, knowing all the circumstances involved, would harbor doubts as to the impartiality of the trial judge." *Id.*, at 305.

The State cites other cases to support its argument that the appellant's situation was not unique, and thus, that we should reverse the Court of Appeals's judgment. The State cites *Kelly v. State,* 18 S.W.3d 239, 242 (Tex.App.-Amarillo 2000, no pet.), and *Madden v. State,* 911 S.W.2d 236, 241–42 (Tex.App.-Waco 1995, pet. ref'd).

In *Kelly,* the defendant appealed the denial of a motion to recuse the trial judge in his aggravated robbery case. The defendant moved to recuse the judge because he had overheard several witnesses discussing an unrelated assault by the defendant. The Court of Appeals concluded that the factual basis for the grounds to recuse the trial judge were not related to the facts and evidence supporting the conviction in the case. *Kelly,* 18 S.W.3d at 241.

In *Madden,* the defendant argued that the trial judge should have disqualified herself because she had prosecuted him in another case before she became a judge. The Court explained that the prohibition against a judge hearing a case in which she had been counsel does not include prior cases having no relation to the case before the court. *Madden,* 911 S.W.2d at 240.

*Kemp, Kelly,* and *Madden* are distinguishable because the trial judges in those cases presided over pretrial proceedings or proceedings in other cases that were unrelated to the case before the trial court at the time. The State asserts that presiding over a prior judicial hearing in which the defendant participated rarely establishes bias or prejudice. Although the proposition is correct, it is inapplicable in this case.

---

**3.** The State does not challenge the Court of Appeals's holding that the trial judge was also subject to a motion to recuse because he was a potential witness in the case. See Tex.R. Civ. P. 18b(2)(b); *Freeman,* No. 13–98–587–CR, slip op. at 7.

In the appellant's case, the trial judge did not simply preside over prior judicial hearings or issue a warrant for her arrest. The trial judge presided over the appellant's son's community supervision revocation hearing and interviewed, in private, two witnesses who were reluctant to testify at the community supervision revocation hearing. The witnesses told the judge that the appellant had threatened them to keep them from testifying. The judge investigated the witnesses' allegations. The judge then informed the authorities, and the appellant was indicted for retaliation.

Then, the same judge was assigned to the appellant's trial for retaliation. The trial judge not only interviewed witnesses for the appellant's trial, but was himself a potential witness for the State. These interactions go above and beyond the normal interactions of judges and defendants resulting from prior judicial hearings.

The appellant contends that her trial attorney should have filed a motion to recuse the trial judge under Texas Rule of Civil Procedure 18a(a), which states, in part, that "any party may file ... a motion stating grounds why the judge before whom the case is pending should not sit on the case. The grounds may include any disability of the judge to sit in the case." In *Arnold v. State*, 853 S.W.2d 543, 544 (Tex.Crim.App.1993), this Court made Rule 18a applicable to criminal cases. Rule 18b(2) states that a judge shall recuse himself in any proceeding in which:

(a) his impartiality might reasonably be questioned;

(b) he has a personal bias or prejudice concerning the subject matter or a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(c) he or a lawyer with whom he previously practiced law has been a material witness concerning it; [or]

(d) he participated as counsel, advisor or material witness in the matter in controversy, or expressed an opinion concerning the merits of it, while acting as an attorney in government service[.]

The record supports the conclusion that the trial judge in this case should have been recused under Rule 18b(2)(a). His comments about initiating the proceedings against the appellant, his comments in response to the appellant's request for bond, and his comments about a letter the appellant wrote about alleged police harassment would cause a reasonable person to doubt the trial judge's impartiality.

The State argues that the trial judge consistently maintained that the appellant's guilt would be determined by the jury. That may be true, but it does not change the doubts that were raised about the judge's impartiality in light of the comments he made at the pretrial hearing. His comments about being involved from the outset of the case and his mocking the appellant in open court on the record undermine the State's claim that the trial judge was impartial.

The State also argues that the fact that the trial court gave the appellant a punishment that was in the middle between the appellant's request and the State's recommendation shows that the trial judge was impartial. But when the trial judge imposed the sentence in this case, he, once again, stressed his personal involvement in the case. Moreover, we are concerned with the time frame when trial counsel could have filed a motion to recuse. To be timely filed, a motion to recuse must be filed at least ten days before trial. Tex.R. Civ. P. 18a(a). There was ample evidence in the record to support a motion to recuse more than ten days before the beginning of the appellant's trial.

Because the trial judge in this case acted in such a way that would cause a reasonable member of the public at large, knowing all the facts in the public domain concerning the judge's conduct, to have a reasonable doubt that the judge was actually impartial, trial counsel should have moved to recuse the judge.

### B. Ineffective Assistance of Counsel

Next, the State claims that, even if the trial judge was subject to recusal in this case, it does not follow that the appellant's trial counsel was ineffective. In support of this claim, the State argues that (1) as with most ineffective assistance of counsel claims brought on appeal, the record in the case is insufficient to overcome the presumption that trial counsel acted within the range of reasonable professional assistance and (2) there are conceivable reasonable trial strategies to support counsel's inaction. The appellant argues that there was no *reasonable* trial strategy supporting trial counsel's inaction. I agree.

In support of its arguments, the State cites one case from the Waco Court of Appeals and cases from other jurisdictions. These cases are distinguishable on their facts.

The State claims that *Madden*, 911 S.W.2d at 241, supports the proposition that the decision not to file a motion to recuse is generally a matter of trial strategy that reviewing courts should not second guess in a *Strickland* analysis. Counsel's decisions are always accorded great deference in a *Strickland* analysis whether the conduct in question is related to the filing of a motion to recuse or some other area of representation. As a general proposition, I agree with the State that the decision to file a motion to recuse is one, like many decisions counsel makes during the representation, that is entitled to great deference from the trial court. If, however, the

State is suggesting that trial counsel's actions in this area is somehow immune from review, it is mistaken.

As I explained above, *Madden* is distinguishable on its facts. The Court of Appeals held that the trial judge was not subject to a motion to recuse, and, as a result, counsel could not have been ineffective for failing to file the motion. *Ibid.*

Similarly, *United States v. Bayless*, 201 F.3d 116 (2d Cir.), *cert. denied*, 529 U.S. 1061, 120 S.Ct. 1571, 146 L.Ed.2d 474 (2000), does not support the State's position. In that case, the trial judge presided over a pretrial suppression hearing in which he granted the defendant's motion to suppress evidence. After receiving harsh publicity regarding his decision, he reopened the case and admitted the evidence. *Id.*, at 123–24. The defendant's trial counsel filed a motion to recuse the judge. The appellate court stated that waiting for the trial judge to rule before filing a motion to recuse is a waiver. *Id.*, at 127. On the defendant's ineffective assistance of counsel claim, the Second Circuit held that there had been no basis for trial counsel to file a motion to recuse before the second hearing because the judge had ruled in the defendant's favor on the initial motion to suppress. *Id.*, at 130.

In this particular case, the trial counsel never filed a motion to recuse, despite being given ample notice of the trial judge's potential bias and prejudice. It was not part of the trial counsel's strategy to see if the trial judge would treat the appellant fairly, then file a motion to recuse. Trial counsel had ample reason, long before trial, to harbor doubts about the trial judge's impartiality. In addition, the source of the trial judge's potential bias in *Bayless* was not that the judge witnessed and took part in the events that led to the defendant's indictment. The judge merely ruled on matters brought

before him in the course of the judicial process. *Bayless* does not support the State's position in this case.

Reliance on *Butts v. State*, 273 Ga. 760, 546 S.E.2d 472 (2001), is equally misplaced. In that case, the trial judge had presided over juvenile proceedings of the defendant and there was nothing in the record to indicate that the trial judge was biased or prejudiced. Also, in *United States v. Ortiz Oliveras*, 717 F.2d 1, 4 n.** (1st Cir.1983), the trial judge's only interactions with the defendant were in prior hearings. In *People v. Scott*, 15 Cal.4th 1188, 65 Cal. Rptr.2d 240, 939 P.2d 354, 365 (1997), the trial judge presided over proceedings regarding the mental state of the defendant, and the California Supreme Court held that there was no evidence of bias or prejudice. In *Thompson v. State*, 671 N.E.2d 1165, 1169 (Ind.1996), the trial judge presided over the defendant's prior criminal trials.

The only case cited by the State with facts even remotely similar to the facts of this particular case is *State v. Gomes*, 93 Hawai'i 13, 995 P.2d 314 (Haw.2000). In *Gomes*, the defendant appealed his conviction for assault in the second degree, on the grounds that the trial judge failed to recuse himself *sua sponte*. The defendant was on trial for assaulting a man while surfing in the ocean. Before the defendant's trial began, the trial judge described an incident in which he had met the appellant.

The trial judge, a fellow surfer, had met the defendant one morning while the two were surfing. The defendant had become upset at the trial judge when the defendant felt that the trial judge had gotten in his way couple of times. The trial judge stated that the defendant:

> got a little bit upset. He did start to berate me; I apologized, but the berating continued. I think that even Mr. Gomes will admit that there was an air of physical menace there. But after things calmed down, he kind of paddled off and sat by himself.... And he did apologize, come over, shake my hand, and we had a nice conversation after that. That was my only contact with Mr. Gomes. It's quite ambivalent, and I can assure counsel and Mr. Gomes that I bear no grudge. I have no opinion, no impression, and I can be fair and impartial.

*Id.*, at 316. The trial judge then went on to mention that he had already had a discussion with counsel regarding this matter off the record in his chambers before going on record. The judge said that he would entertain any motions for recusal at that point, and the defendant declined to file or request recusal. The trial judge told the defendant directly that he would be sentencing the defendant, and the defendant stated that he understood that. Still no motion to recuse was filed, and the trial judge asked the defendant directly if he was sure. The defendant said yes. The trial proceeded, the defendant was found guilty, and the trial judge sentenced the defendant· to five years probation. *Ibid.*

On appeal, the defendant argued that the trial judge should have recused himself, *sua sponte*, based on an appearance of impropriety. The defendant failed to allege that the trial judge was actually biased but argued that the appearance of impropriety was sufficient to warrant a recusal. He also did not claim that his trial counsel was ineffective for failing to file a motion to recuse. The Supreme Court of Hawai'i held that the trial judge did not err in failing to recuse himself *sua sponte*. *Id.*, at 321. In the case before this Court, the appellant alleged ineffective assistance of counsel for her trial counsel's failure to file a motion to recuse the trial

judge. The appellant never alleges that the trial judge should have recused himself *sua sponte*.

It is important to note that the Hawai'i Supreme Court discussed in a footnote the defendant's decision not to file a motion to recuse. In dicta, the Hawai'i Supreme Court stated that "whether to file a motion to disqualify a judge is a strategic decision that is generally left to defense counsel.... In the present matter, [the trial judge] expressly offered both Gomes and his counsel the opportunity to interpose a motion to recuse. Gomes and his counsel declined to do so. We will not second guess that strategy on appeal." *Id.*, at 321 n. 5.

The *Gomes* case is not controlling or even persuasive on the facts of the appellant's case. In the appellant's case, no such dialogue between the judge, her trial counsel, and the appellant herself ever took place. When determining the merits of an ineffective assistance of counsel claim, the reviewing court must look at all the facts of the particular case. The facts of this particular case are not similar enough to the facts found in the *Gomes* case, and thus the analysis is not the same.

In this case, the appellant did not come before the trial judge in prior judicial proceedings as a party or a defendant. The trial judge was the one who, in his own words, "suspect[ed] that there was something wrong going on and, ... halfway approved [the State's pursuit of charges against the appellant]." The trial judge initiated an investigation into the allegations of retaliation and was a potential witness for the State. A trial judge who simply reads a transcript of previous events would not have the same kind of intimate knowledge of the underlying facts as the trial judge in the appellant's case had. No other judge had participated in the events that were the basis for the

offense for which the appellant was being tried. The trial judge in appellant's case had an extra-judicial relationship with the appellant.

The State and the dissenting Justice from the Court of Appeals have provided what they believe to be conceivable trial strategies in an attempt to explain trial counsel's inaction. *Freeman v. State*, No. 13–98–587–CR, slip op. at 2–3 (Hill, J., dissenting). The reasons given include: (1) counsel had great confidence in the trial judge's ability to hear the case fairly; (2) counsel may have been worried about alienating the trial judge if the motion was unsuccessful; (3) counsel may have been concerned about the ability or temperament of a judge who would hear the case if the motion was successful; and (4) trial counsel may have wanted to avoid further delay. These general considerations are not *reasonable* trial strategies based on the record before us.

First, the State and the dissenting Justice from the Court of Appeals suggested that counsel may have had great confidence in the trial judge's ability to hear the case fairly. Whatever counsel's opinions may have been before, counsel should have had grave doubts about the trial judge's ability to hear the case fairly after hearing the comments made on the record in open court by the judge.

Looking at the record from the pretrial hearing, the trial judge made his prejudice against the appellant obvious. Although the trial judge told the appellant that it was not his job to find her guilty, he also made several negative comments directed towards the appellant, such as "[s]he's always a bad." When a trial judge states on record his frustration with the appellant from his prior experiences with her and anticipates that she will continue to be a nuisance to the court, he has affirmatively demonstrated that he has not put aside his

bias or prejudice. In this situation, *reason* leaves no room for a trial strategy that assumes the trial judge will be able to put aside his bias or prejudice.

Second, if trial counsel had been concerned about alienating the trial judge in the event the motion was unsuccessful, he would have had plenty of support for a reversal on appeal from this record. This is not a legitimate reason to fail to pursue a motion to rescue. The motion to recuse is to protect the client's right to a fair trial. This should be paramount to other considerations. The appellant was adamant about her innocence and concerned about how she would prove her case in court, even offering to take a lie detector test. It is not *reasonable* for an attorney to choose efficiency in the trial proceedings rather than ensuring that his client receives a fair trial, especially when the client is so adamant about her innocence.

Third, even if trial counsel had been concerned about the ability or temperament of a judge who would be likely to hear the case in the event the motion was successful, the stark fact remains that no other judge would have had the same first-hand knowledge of this particular case that this trial judge had. The difference between learning about the appellant's actions from reading transcripts of prior proceedings, and being the judge who questioned witnesses, who reported the appellant's threats to the proper authority, and who was a potential witness himself, is too great for *reason* to ignore.

Fourth, concerns about potential delay are not outweighed in this case by the concern about a trial judge with intimate knowledge of the facts of the case who had strong opinions about the appellant's guilt and who mocked her on the record in open court.

Generally speaking, there are a myriad of reasons why trial counsel might choose not to file a motion for recusal in any given case. But in this *particular* case, there is no *reasonable* explanation for the trial counsel's decision. As the State has reminded this Court in its brief, "any one particular decision that trial counsel makes during the course of his representation should generally not be viewed in a vacuum ..." In light of the facts known to the trial counsel at the time he failed to file a motion for recusal, which are plainly stated in the record from the pretrial hearing, his conduct fell below an objective standard of reasonableness.

The trial record in this case provides sufficient evidence to support the Court of Appeals's conclusion that the appellant's trial counsel's performance was deficient. The record shows by a preponderance of the evidence that the trial counsel's conduct fell below an objective standard of reasonableness. No *reasonable* trial strategy could justify trial counsel's failure to file a motion for recusal in this particular case. I would affirm the Court of Appeals's judgment. Because the Court does not, I dissent.