In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-086 CR


____________________



MARVIN WHINERY, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 217th District Court


Angelina County, Texas


Trial Court Cause No. CR-23562






MEMORANDUM OPINION


 A jury convicted Marvin Whinery of one count of aggravated sexual assault of a
child and three counts of indecency with a child. See Tex. Pen. Code Ann. § 21.11
(Vernon 2003), § 22.021(a)(1)(B)(v), (2)(B) (Vernon Supp. 2005). The sentences, to be
served concurrently, totaled eighty years. 

 Appellant argues the evidence is legally and factually insufficient to support the
jury's verdict. In a legal sufficiency review, we consider all the evidence in the light most
favorable to the prosecution and then determine whether a "rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt." See Jackson v.
Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Escamilla v. State,
143 S.W.3d 814, 817 (Tex. Crim. App. 2004). In a factual sufficiency review, the
evidence is considered in a neutral light. The reviewing court sets aside the verdict only
if the evidence is so "clearly wrong and manifestly unjust, or the contrary evidence is so
strong that the standard of proof beyond a reasonable doubt could not have been met." 
Escamilla, 143 S.W.3d at 817. 

 Ms. Lumbley taught MF and LM in their fifth grade "puberty education class." In
response to Ms. Lumbley's request to submit written questions, ten-year-old MF gave the
teacher a note that stated "it is about my grandpa[.]" Lumbley then spoke with MF in
private. MF told Lumbley that MF's grandfather touched her. Using a classroom poster,
MF pointed to the female genitals. She told Ms. Lumbley the "touching" had been going
on for a long time. MF then confided to Ms. Lumbley that her grandfather had also
touched LM, another student in the class, and MF's two sisters, one of whom was a baby. 
When Lumbley asked LM about MF's note, LM said she knew MF's grandfather touched
MF. Then LM "broke down," became "near hysterical," and stated MF's grandfather
touched her too. Lumbley notified the school counselor who notified the police and Child
Protective Services. 

 MF testified at trial that defendant touched her genitals, engaged in oral- genital and
hand-to-genital contact with her, and showed her Playboy magazines and "porno" movies. 
LM testified defendant touched and rubbed her genitals. MW testified by videotape that
defendant grabbed her and touched her (over her clothes) in the private area (1) with his
hands and fingers. 

 The grandmother of MF and MW testified the girls came to the grandparents' home
almost every afternoon. She and appellant had gotten rid of all their Playboy-type
magazines and "pornographic" movies before they moved to the Diboll area. According
to the grandmother, MF was in trouble most of the time, "wouldn't mind," and frequently
lied to get attention. She testified MF has influenced MW and LM. 

 Appellant denied committing the crimes. He acknowledged tickling MW, but never
MF. Although he used to view pornographic movies and magazines, he stopped the
practice when the kids and grandkids began moving in with him and his wife. As to why
MF would make the accusations against him, appellant believed she was angry at him for
disciplining her. He testified he has no idea why the other girls accused him.

 Appellant's former daughter-in-law testified she trusts appellant with her children,
but she knows he has watched pornography. She says MF lies. On cross-examination,
the jury heard testimony the former daughter-in-law engaged in violent, sexual games with
her ex-husband though she says she did not do so willingly, and she was good friends with
a man imprisoned for aggravated sexual assault. 

 The daughter of the former daughter-in-law, MB, testified that a week after she
reported her stepfather for sexually abusing her, MF said "she [MF] was going to tell the
cops that either my Pawpaw or her dad -- that they sexually assaulted her so she can get
as much attention as I did." "[MF] repeatedly said it for, like, a month." MB indicated
MF was jealous of the attention MB was getting. The jury also heard testimony MB is
emotionally unstable. 

 The evidence is legally and factually sufficient to support the jury's verdict. The
jury could have found the essential elements of aggravated sexual assault and indecency
with a child beyond a reasonable doubt. The girls' testimony is not so weak that the
verdict is clearly wrong and unjust, and the contrary evidence -- that MF made up the
allegations and influenced the other girls to go along with the story -- is not so strong that
the beyond-a-reasonable-doubt standard of proof was not met. See generally Escamilla,
143 S.W.3d at 817.

 Whinery also argues he was unfairly prejudiced by the prosecutor's question that
referred to Whinery's son's conviction for sexual assault of a child. During the testimony
of the CPS investigator, the following exchange occurred: 

 Q. [Prosecutor]: Are you familiar with the Defendant, Mr. Whinery?


 A. I am. I met him one previous occasion whenever I accompanied a case
worker to his home. We were investigating his son, Louie. And he was out
on the porch. This was about two years ago. He was out on his porch,
screaming at myself and my coworker from across the -- from across the
street. He was yelling and cursing at us.


 Q. And this was approximately two years ago?


 A. Uh-huh.


 Q. And do you recognize Mr. Whinery as the man in the courtroom, sitting
next to [defense counsel]?


 A. Yes.


 Q. Where was his house at that time?


 A. It was in the trailer park in Diboll.


 Q. And you were in -- you were not investigating him; you were
investigating his son, Louie?


 A. Yes.


 Q. And what was that for?


 A. Sexual assault of a child.


 [Defense Counsel]: Your Honor, I object to relevance.


 [The Court]: Sustained.


 [Defense Counsel]: I'd ask for a Motion to Strike.


 [The Court]: I'll instruct the jury to disregard the last question and answer. 
Proceed. 


Appellant's argument on appeal is, in substance, a claim of prosecutorial misconduct. The
defendant objected at trial on relevancy grounds, not on prosecutorial misconduct grounds.
Because the objection at trial does not comport with the complaint on appeal, appellant
waived review of the prosecutorial misconduct issue. See Jeffley v. State, 38 S.W.3d 847,
861 (Tex. App.--Houston [14th Dist.] 2001, pet. ref'd). The trial court sustained the
relevance objection made by defendant, and upon defendant's request, the trial court
instructed the jury to disregard the prosecutor's question and Soto's answer. Appellant
received what he requested from the trial court. There is no error.

 Whinery argues ineffective assistance of counsel, because his attorney failed to
request a mistrial when the prosecutor asked why CPS was investigating defendant's son. 
To prevail on a claim of ineffective assistance of counsel, appellant must satisfy the two-prong test in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984). He must show counsel's performance was deficient and he was prejudiced by
counsel's deficient performance. Id. at 694; see also Resendiz v. State, 112 S.W.3d 541,
547 (Tex. Crim. App. 2003). The information concerning defendant's son also came in
later through defense witness MB. MB explained MF wanted attention similar to what MB
received for reporting that defendant's son sexually abused her. Ineffective assistance of
counsel was not raised in the motion for new trial. The record does not reflect why trial
counsel did not request a mistrial. The record on this direct appeal is undeveloped. See
Freeman v. State, 125 S.W.3d 505, 506-07 (Tex. Crim. App. 2003); Thompson v. State,
9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999). On this record, we can only speculate on
both sides of the issue. Without more, an appellate court "must presume that counsel acted
pursuant to a reasonable trial strategy." Scheanette v. State, 144 S.W.3d 503, 510 (Tex.
Crim. App. 2004). 

 Appellant's three issues are overruled. The conviction is affirmed.

 AFFIRMED.

 _________________________________

 DAVID GAULTNEY

 Justice



Submitted on January 26, 2005

Opinion Delivered February 2, 2005

Do Not Publish


Before McKeithen, C.J., Gaultney, and Horton, JJ.
1. In the interview with MW, the CPS caseworker used a picture of the female body. 
It is apparent from the caseworker's discussion with MW that the child indicated appellant
touched MW's genitals.