NOS. 07-11-00034-CR; 07-11-00035-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

OCTOBER 31, 2011

---

CEDRICK LAMONT SMITH, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

---

FROM THE 147TH DISTRICT COURT OF TRAVIS COUNTY;

NOS. D-1-DC-10-200961, D-1-DC-10-907273;

HONORABLE WILFORD FLOWERS, JUDGE

---

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant, Cedrick Lamont Smith, was convicted of possession of a controlled substance, cocaine, in an amount of one gram or more but less than four grams.[1] (Trial cause number D-1-DC-10-200961, appellate cause No. 07-11-0034-CR) Appellant was also convicted of evading arrest with a prior conviction for evading arrest.[2] (Trial cause number D-1-DC-10-907273, appellate cause No. 07-11-0035-CR) Each indictment was

---

[1] See TEX. HEALTH & SAFETY CODE ANN. § 481.115(c) (West 2010).

[2] See TEX. PENAL CODE ANN. § 38.04(a),(b)(1)(A) (West 2011).

enhanced by allegations of prior felony convictions.[3] After convicting appellant of the offenses, the jury found the enhancement allegations true and assessed punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ) for a term of 90 years on the possession conviction and 20 years on the evading arrest conviction. Appellant appeals the judgments of the trial court contending his trial counsel was ineffective, that the trial court erred denying appellant's request for a mistrial, and that the judgment of conviction should be reformed to reflect conviction for the correct level of felony offense. We will affirm the judgment as modified.

Factual and Procedural Background

Appellant does not contest the sufficiency of the evidence to support the jury's verdict; therefore, only as much of the factual background as is necessary for the opinion will be recited. Appellant was stopped by an Austin police officer for driving with an expired registration. Initially, appellant did not stop but continued to drive slowly with the police cruiser following with its emergency lights on. When appellant stopped, he opened the door of his car to talk to the officer. Appellant eventually bolted from the officer, and a foot pursuit ensued. While pursuing appellant, the officer noticed appellant apparently discarding items. After appellant was caught and detained, the arresting officer retraced the path appellant had taken and found two packages of suspected cocaine. During a search of appellant's vehicle, an additional package of suspected cocaine was located in the driver's side door. Appellant was then indicted for possession of a controlled substance, cocaine, in an amount of four grams or more but

---

[3] See TEX. PENAL CODE ANN. § 12.42(d) (West 2011).

less than 200 grams and evading arrest with a prior conviction for evading arrest. Each indictment was accompanied by an enhancement paragraph alleging appellant was a habitual offender.

On November 1, 2010, appellant was arraigned on the indictments that had been returned against him. During the arraignment, appellant entered pleas of not guilty and answered the questions propounded to him by the trial court without any incident. The record reflects that, during the arraignment, appellant acknowledged he was aware of the State's plea bargain offer and that he declined to accept it.

The trial commenced on November 29, 2010. Prior to voir dire, appellant answered affirmatively to the trial judge's question about whether it was appellant's desire to have the jury assess punishment. Voir dire was then conducted without incident.

The following day, November 30, the trial court began the evidence portion of the guilt-innocence stage of the trial. It was at this time that appellant began his disruptive behavior. Initially, while the jury was still out of the courtroom, appellant began arguing with the court about his plea to the evading arrest charge. Appellant kept insisting that he had entered a plea of guilty to that charge. As appellant continued trying to discuss the issue of his plea to the evading arrest indictment, he was admonished that if he continued interrupting the court he would be gagged. During this exchange, appellant first announced to the court that he desired to fire his attorney and get someone else to represent him. The trial court denied his request. Appellant continued to argue with the court, and it was at this time that the record first reflects that the jury was present in the

3

courtroom during one of appellant's outbursts. The appellant continued to argue with the trial court, and the trial judge ordered the jury to be removed from the courtroom. As the jury exited the courtroom, appellant stated, "If the jury is going to get me—no, man, I am not going to sit here and let y'all give me some time because that's what is going on right now. He is telling me just be quiet and go with you. No. I see what's going on, man." The record reflects that the jury was out of the courtroom at the time appellant finished his statement. Appellant continued to argue for a new lawyer, and the trial court continued to deny the request. All during this portion of the record, appellant had two themes in his outburst. First, he insisted he had already entered a plea of guilty to the evading arrest indictment. The record affirmatively disproves this proposition; appellant entered a plea of not guilty during the arraignment. Second, appellant continued to demand another attorney, which the trial court denied.

At the conclusion of this episode, the trial court inquired of the bailiff if there were restraints available as the trial court opined that appellant was going to continue to act out during the trial. At the conclusion of this part of the trial, the court ordered appellant to be placed in restraints and then be brought back into the courtroom.

As the deputy sheriff began trying to place restraints on appellant, appellant began using profanity toward the deputy. The deputy kept requesting appellant to calm down; however, appellant only continued to argue with him. Eventually, the trial court noted on the record that the time was 9:24 and that they had begun at 9:00, and appellant continued to be disruptive. As the trial court tried to return to the pre-trial matters that the court had originally been discussing with counsel, appellant again

4

interrupted the proceedings. When the trial court denied another request to appoint another attorney, appellant stated, "Okay. Well, send the jury in here. I am going to tell them the same thing. The outcome is going to be whatever it's going to be anyway. I can't change that, but I am going to speak up for myself. I'm going to speak up for myself." This theme continued for approximately eight pages in the record. Eventually, the trial court noted that appellant's behavior was escalating.

At this point in time, appellant began lacing his outbursts with a significant amount of profanity. The trial court then asked the Sheriff's representative to arrange for a gag for appellant. Appellant responded with a challenge for the court to "[g]o ahead and call the jury in here." The jury was eventually brought in, according to the record, at 9:28.

Upon the jury returning to the courtroom, appellant again began his profanity-laced outbursts. This continued until the record reflected 9:48, at which time the trial court again questioned the sheriff's representative about whether they had found a gag. When asked if he would follow the rules, appellant answered with more profanity. The trial judge then ordered appellant taken from the courtroom into a holding cell. The court then offered an explanation to the jury that the difficulty had been going on for "the last 40 minutes." The court further stated that steps would be taken to see if they could proceed without further interruption. The jury was then taken from the courtroom.

While both the jury and appellant were out of the courtroom, the trial court made arrangements for the appellant to listen to the proceedings in the holding cell. However, the court stated that he was going to give appellant another opportunity to be present in

5

the courtroom. The trial judge opined on the record that he believed appellant was being manipulative and disruptive deliberately to attempt to manipulate the proceedings in order to obtain a more favorable outcome. The jury was returned to the courtroom, and appellant was also brought back into the courtroom. Appellant immediately launched into another outburst filled with profanity. The trial judge ordered appellant removed from the courtroom. The court explained to the jury that, because of appellant's behavior, appellant had been removed and would be listening to the proceedings electronically. Further, the court explained that frequent breaks would be taken to allow appellant's counsel an opportunity to visit with appellant about the trial and the testimony. The trial court then took announcements, and the trial commenced.

The testimony was received, and after the State rested its case, appellant's counsel was instructed to visit with appellant during the lunch break about whether he desired to testify. When the court reassembled after the lunch break, the trial judge advised he was going to have appellant brought back to the courtroom to see if he would participate without disrupting the proceedings. When appellant was brought back to the court, he once again began berating his counsel and the court with profanity. The trial judge ordered appellant be taken back to the holding cell to listen to the remainder of the proceedings electronically. At this time, appellant's counsel requested a mistrial based upon the "deteriorating condition" of appellant and counsel's not being able to consult with appellant. The trial court stated on the record that appellant had been examined for purposes of competency and found to be competent. The clerk's record contains an order ordering appellant to be examined. There is nothing further in the clerk's record that would indicate appellant was found incompetent, nor is there any

record of a proceeding before the trial court on that issue. The trial judge overruled the motion for mistrial, and the trial proceeded.

The trial court prepared a charge to the jury on both indicted offenses. In connection with the possession of a controlled substance case, the trial court charged the jury on the indicted offense, possession of an amount of four grams or more but less than 200 grams, and the lesser-included offense of possession of a controlled substance of an amount of one gram or more but less than four grams.

During final arguments, the matter of appellant's outbursts was not mentioned by the State, either in the opening or closing portions. Trial counsel mentioned the matter only once and that was to apologize for the language that the jury had heard earlier in the day. The jury returned a verdict of guilty on the lesser-included charge of possession of one gram or more but less than four grams. The jury also returned a verdict of guilty on the charge of evading arrest after having been previously convicted of evading arrest.

The next day, the trial court began the punishment phase of the trial. Before the trial court brought the jury in, the trial judge inquired of appellant's counsel and appellant about whether he wished to participate in the punishment portion of the trial. Appellant answered affirmatively and, when asked if he would abide by the rules, he also answered affirmatively. However, appellant declined to wear anything except his jail clothes while appearing before the jury. The trial court specifically inquired if appellant had been given the opportunity to appear in "street clothes," and appellant answered affirmatively.

7

During the State's portion of the evidence on punishment, Roger Dean, an investigator for the Travis County District Attorney's Office testified about his training in fingerprint comparison. Dean testified that appellant was the same person convicted in the exhibits introduced to prove the habitual enhancement allegtions of the indictments. The State also called Deputy Mark Smith of the Travis County Sheriff's Office who testified about his contact with appellant while transporting him from detention to the courtroom. Smith testified that appellant was cooperative until he got to the holding cell adjacent to the courtroom. While Smith was putting a leg restraint on appellant prior to bringing appellant into the courtroom, appellant began yelling at the deputy. This then escalated into the yelling and obscenities of the previous day. Smith then testified that appellant was cooperative when being transported back to court for the punishment portion of the trial. The State rested and appellant rested without calling any witnesses.

After hearing the evidence, the jury found the habitual enhancement allegations to be true and assessed a term of confinement of 90 years in the ID-TDCJ for the possession conviction and 20 years in the ID-TDCJ for the evading arrest convicton. Appellant now appeals the judgments of the trial court by three issues.

Appellant contends that his trial counsel was ineffective by failing to object to the trial court bringing the jury into the courtroom during appellant's outbursts and by failing to move for a mistrial after the jury observed appellant's behavior. In his second issue, appellant contends the trial court erred when it denied trial counsel's motion for a mistrial after the State rested its case. Finally, appellant contends that the judgment entered by the trial court incorrectly notes that he was convicted of a second-degree

8

felony when in fact he was convicted of a third-degree felony. We will affirm the trial court's judgment as reformed.

## Ineffective Assistance of Counsel

### Standard of Review

In determining whether counsel's representation was so inadequate as to violate a defendant's Sixth Amendment right to counsel, Texas courts apply the two-pronged test enunciated in Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Hernandez v. State, 726 S.W.2d 53, 55 (Tex.Crim.App. 1986). Judicial review of an ineffective assistance of counsel claim must be highly deferential, and there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689. An appellant bears the burden of proving by a preponderance of the evidence that (1) counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the appellant. Freeman v. State, 125 S.W.3d 505, 511 (Tex.Crim.App. 2003). Failure to make the required showing of either deficient performance or sufficient prejudice is fatal to an ineffectiveness claim. See id. Reviewing courts "commonly assume a strategic motive if any can be imagined" and will conclude that counsel's performance was "deficient only if the conduct was so outrageous that no competent attorney would have engaged in it." Andrews v. State, 159 S.W.3d 98, 101 (Tex.Crim.App. 2005).

<u>Analysis</u>

Appellant contends that his trial counsel was ineffective in two particulars. First, counsel was allegedly ineffective when he did not object to the trial court bringing the jury into the courtroom when appellant was making one of his outbursts. Second, appellant contends his counsel was ineffective for failure to move for a mistrial after the jury witnessed appellant's outburst.

If we assume, *arguendo*, that the trial court erred by bringing the jury into the courtroom while appellant was making one of his outbursts, we must review the entire record of the event to see if we can ascertain any reason for trial counsel's decision not to object. <u>See</u> <u>Strickland</u>, 466 U.S. at 690. A review of the record before us does not assist us in this endeavor. There is nothing in the record of the trial proceeding indicating what counsel's motive for not objecting might have been. And, although a motion for new trial was filed in this matter, it was overruled by operation of law and no hearing was conducted. At the end of the day, we are left to speculate as to the reasons for counsel's inaction.

As we review these facts for determination of whether counsel's actions fell below an objective standard of reasonableness, as required by <u>Freeman</u>, 125 S.W.3d at 511, we are mindful that the burden on this issue rests on appellant by a preponderance of the evidence. <u>Id</u>. The record is devoid on the issue counsel's motives, strategy, or tactical plans. This is fatal to appellant's issue, for we must remember that we are to review counsel's action in a deferential manner. <u>See</u> <u>Strickland</u>, 466 U.S. at 689. Further, we commonly assume a strategic reason for an action, if any can be imagined.

10

<u>Andrews</u>, 159 S.W.3d at 101. The State suggests that counsel was faced with a choice of shackling and gagging appellant throughout the trial and letting the jury possibly think appellant was a violent person or letting them hear a rant. We likewise conclude that trial counsel's reason for his inaction are critical to this issue and without more development of the record, we overrule appellant's contention that trial counsel's failure to object to the jury being present was an act of an ineffective counsel.

However, we note that the record does not support the proposition that trial counsel's failure to object to the presence of the jury was prejudicial to appellant. A review of the record leads to the following conclusions. First, there was a significant amount of evidence that compelled the jury to find appellant guilty of the evading arrest charge. Second, the jury listened closely to the evidence regarding the possession of a controlled substance charge. In fact, the jury found appellant guilty of only the lesser-included charge of possession of a controlled substance of more than one gram but less than four grams. This was the amount of contraband found in the door of the vehicle appellant abandoned when he attempted to evade the officers. Additionally, we note that the incident of appellant's outburst was mentioned only one time in the final arguments in the guilt-innocence phase of the trial. That was a one line apology by trial counsel for the jury having to listen to bad language. As we view the record, the outbursts of appellant had no prejudicial effect on appellant in the guilt-innocence phase of the trial. <u>See</u> <u>Freeman</u>, 125 S.W.3d at 511.

As to the punishment phase of the trial, appellant contends that the length of the sentences handed down by the jury prove prejudice. However, such a position ignores

the substantial amount of evidence the State produced during the punishment phase. The record demonstrates that the State was able to prove all three of the prior felony convictions of appellant that were part of the habitual offender allegations in the indictments. Additionally, the State proved two other misdemeanor convictions and a family assault conviction. The applicable range of punishment for appellant on each of the possession of a controlled substance offense was for a term of confinement from 25 years to 99 years or life. See TEX. PENAL CODE ANN. § 12.42(d). The applicable range of punishment for appellant on the evading arrest charge was for a term of confinement of not less than two nor more than 20 years. Id. §§ 12.33, 12.42(a)(2). Additionally, the punishment range on the evading indictment included a fine not to exceed $10,000. The jury did not give the maximum sentence on the possession charge and did not include a fine on the evading arrest charge. Finally, a review of the State's final argument on punishment did not unduly emphasize appellant's courtroom conduct; rather, it was focused on appellant's criminal history. In light of that criminal history, the verdicts do not singularly show appellant was prejudiced by the failure of trial counsel to object. See Freeman, 125 S.W.3d at 511. Therefore, appellant's contention regarding ineffective assistance of counsel for failure to object to the trial court bringing in the jury during his appellant's outburst is overruled.

As to appellant's contention that trial counsel was ineffective because he failed to ask for a mistrial after the jury observed appellant's outburst, that issue also suffers from the same deficiencies noted above and is also overruled.

Mistrial Request

After the State had rested its case-in-chief during the guilt-innocence phase of the trial, appellant was brought back into the courtroom for the purposes of inquiring about whether he desired to testify.  When asked by trial counsel if he desired to testify, appellant launched into another profanity-laced tirade at the court and his attorney.  After the trial court instructed that appellant be taken back to the holding cell to monitor the proceedings electronically, trial counsel requested a mistrial "based on [appellant's] deteriorating condition."  The trial court overruled the motion.  Appellant contends that the trial court's action in overruling his request for mistrial is reversible error.

Standard of Review

A mistrial is an extreme remedy that is reserved for a very narrow classification of circumstances involving highly prejudicial and incurable errors.  See Ocon v. State, 284 S.W.3d 880, 884 (Tex.Crim.App. 2009).  A mistrial is used to halt proceedings when the error involved makes the expenditure of further time and expense wasteful and futile.  Id.  The decision to grant a mistrial is governed by the particular facts of the case.  Id.  A trial court's decision to deny a motion for mistrial is reviewed under an abuse of discretion standard.  Id.  The denial of the motion for mistrial must be upheld if it was within the zone of reasonable disagreement.  Id.

Analysis

From the terms used in defense counsel's trial objection, it would appear that appellant's mistrial contention is rooted in the assumption that he was suffering from a

13

deteriorating mental condition that made it impossible for him to communicate with his attorney effectively. This, according to appellant's analysis, denied him his Sixth Amendment right to effective assistance of counsel. See U.S. CONST. amend. VI.

In reviewing the actions of the trial court in denying the motion for mistrial, we must consider the context in which this motion was made. The record reflects that at his arraignment appellant was cooperative and entered the pleas without difficulty. At the next stage of the proceeding, voir dire, there is nothing in the record to suggest that appellant was having any trouble communicating with his attorney or otherwise suffering from any type of deteriorating condition. It was only when faced with the certainty of trial on the merits that appellant's conduct became disruptive. A part of that conduct was appellant's continued insistence through the first day testimony that he wanted to fire his attorney, which the trial court consistently denied. This was the state of affairs when appellant was brought back into the court to discuss whether he would testify. After the outburst at issue and the trial court's denial of the motion for mistrial, the trial court stated that appellant had been examined for competency. The clerk's record indicates a motion to have appellant examined was filed and that the trial court ordered the exam. After that, the record is silent, which leads us to infer that the examining doctor found appellant competent as there were no further proceedings on the issue. See TEX. CODE CRIM. PROC. ANN. art. 46B.005 (West 2007).

Rather than an inability to confer with his counsel due to a deteriorating condition, the record suggests that appellant's inability to confer was due to his own willful conduct in attempting to disrupt the proceedings. Such a conclusion becomes

14

even stronger when the proceedings the following day are considered. After a day of confrontation and outbursts, the next day appellant appeared in court without incident. Rather, he chose to express his disregard by refusing to wear street clothes and, instead, appearing in his jail clothes.

The record supports the proposition that appellant's inability to communicate with his counsel was due solely to the decisions that appellant made regarding his own conduct. As such, we will not sanction appellant's actions nor can we allow him to benefit from them. See Kelly v. State, 60 S.W.3d 299, 304 (Tex.App.—Dallas 2001, no pet.) As stated in Chamberlain v. State, 453 S.W.2d 490, 493 (Tex.Crim.App. 1970), "[t]o allow the appellant to take advantage of his own misconduct, the attempted administration of justice would become a mockery." Because the trial court's decision to overrule the motion for mistrial is supported by the facts and the law, the court could not have abused his discretion. See Ocon, 284 S.W.3d at 884. Accordingly, appellant's second contention is overruled.

## Judgment

Appellant's final contention is that the trial court judgment for the possession of a controlled substance is erroneous, in that it refers to appellant being convicted of a second-degree felony when, in fact, appellant was convicted of a third-degree felony. The State has conceded that appellant is correct. Accordingly, we order the judgment reformed to reflect that appellant was convicted of a third-degree felony.

Additionally, we note that the judgment for the evading arrest with a prior evading conviction indicates a conviction for a second-degree felony offense. As the State

15

indicates in its brief, the proper degree of felony for this conviction is a state-jail felony. Accordingly, we reform that judgment to reflect a conviction for a state-jail felony offense.[4]

## Conclusion

Having ordered the judgment to be modified and having overruled appellant's other issues, we affirm the trial court's judgments as reformed.

Mackey K. Hancock
Justice

Do not publish.

---

[4] The offense was punished as a felony of the second-degree due to the habitual enhancements contained in the indictment. <u>See</u> TEX. PENAL CODE ANN. §§ 12.33, 12.42(a)(2).