Affirmed and Memorandum Opinion filed May 13, 2004









Affirmed and Memorandum Opinion filed May 13, 2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-01300-CR

____________

 

GOREE
HAWKINS, JR., Appellant

 

V.

 

THE STATE
OF TEXAS, Appellee

 

________________________________________________________

 

On Appeal from the 272nd District Court

Brazos County, Texas

Trial Court Cause No. 29519F-272

 

________________________________________________________

 

M E M O R A N D U M   O P I N I O N

In two issues, appellant Goree
Hawkins, Jr. contends he received ineffective assistance of counsel and challenges
the sufficiency of the evidence to support his conviction. We affirm.[1]








I.  Factual
and Procedural Background

On the morning of November 27,
2001, T.W. and her mother were sleeping when T.W. awoke to find a man standing
over her mother and stating, AI=ve got a
gun.@  T.W. testified that the man then stated he
only wanted money and would not use the gun unless he had to.  Once the man noticed T.W. was awake, he
requested both women get out of their beds and look for a wallet.  After no success in the search for the
wallet, T.W.=s mother became hysterical.  When this happened, the man tied up T.W.=s mother
on her bed and eventually gagged her. 
The assailant again demanded T.W. search for the wallet, which she did
to no avail.  The assailant then
requested T.W. join him in the hallway. 
Once there, he grabbed T.W. by the arm and told her to undress and lay
on the floor with her legs spread.  T.W.
complied.  According to T.W.=s
testimony, the assailant then attempted sexual intercourse but was
unsuccessful.  He then told T.W. to get
dressed, which she did.  The assailant
requested T.W. search again for the wallet. 
While she was searching in the kitchen and living room, he directed her
to return to the hallway.  The assailant
told T.W. to disrobe again and get on her hands and knees.  He got behind T.W. and again attempted sexual
intercourse without success.  After T.W.
got dressed, the assailant pushed her into the living room and told her to lay
face down while he tied her wrists and ankles. 
T.W.=s mother freed herself in time to
see the assailant running from their duplex. 
T.W. and her mother later identified appellant as the assailant.

Appellant was charged by
indictment with the offenses of sexual assault and burglary of a habitation
with intent to commit sexual assault.  See
Tex. Pen. Code Ann. '' 22.011,
30.02 (Vernon 2003).  The State proceeded
on the sexual assault charge only.  A
jury found appellant guilty and, after finding the two enhancement paragraphs[2]
true, assessed punishment at life imprisonment in the Texas Department of
Criminal Justice, Institutional Division.  









II.  Issues
Presented

Appellant presents the following
issues for appellate review:

(1)       Was appellant denied effective assistance
of counsel during the guilt/innocence and punishment phases of trial?

(2)       Is the evidence sufficient to support
appellant=s conviction for sexual
assault?

 

III.  Analysis

                                       A.  Ineffective Assistance of Counsel Claim

 

In his first issue, appellant
argues trial counsel provided him ineffective assistance during the
guilt/innocence and punishment phases of trial.[3]  Specifically, appellant contends counsel was
ineffective because (1) defense counsel permitted Beverly Allen to testify as
an expert witness without challenging her qualifications or the facts upon
which she based her opinion; and (2) defense counsel opened the door to and did
not object when the State discussed the application of parole law to appellant=s case
during the punishment phase.  Although appellant filed a motion for
new trial, his only complaint was that Athe verdict is contrary to the law
and evidence.@ 
He did not raise the issue of ineffective assistance of counsel in the
motion.  The record does not indicate a
hearing was held on the motion, and in due course, it was overruled by
operation of law.  








Both the United States and Texas Constitutions guarantee an
accused the right to assistance of counsel. U.S.
Const. amend. VI; Tex. Const. art.
I, ' 10; Tex. Code Crim. Proc. art. 1.051 (Vernon Supp. 2004).  This right necessarily includes the right to
reasonably effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668,
686, 104 S. Ct. 2052, 2063, 80 L. Ed. 2d 674 (1984); Ex parte Gonzales,
945 S.W.2d 830, 835 (Tex. Crim. App. 1997). 
To prove ineffective assistance of counsel, appellant must show that (1)
trial counsel=s representation fell below an
objective standard of reasonableness, based on prevailing professional norms;
and (2) there is a reasonable probability that the result of the proceeding
would have been different but for trial counsel=s deficient performance.  See Strickland, 466 U.S. at 688B92. 
Moreover, appellant bears the burden of proving his claims by a preponderance
of the evidence.  Jackson v. State,
973 S.W.2d 954, 956 (Tex. Crim. App. 1998). 


In assessing appellant=s claims, we apply a strong
presumption that trial counsel was competent.  Thompson v. State, 9 S.W.3d 808, 813 (Tex.
Crim. App. 1999).  We presume counsel=s actions and decisions were
reasonably professional and were motivated by sound trial strategy.  See Jackson v. State, 877 S.W.2d 768, 771
(Tex. Crim. App. 1994).  Appellant has
the burden to rebut this presumption by presenting evidence illustrating why
trial counsel did what he did.  See
id.  An appellant cannot meet this
burden when counsel=s actions may have been based on tactical decisions and the
record does not specifically focus on the reasons for trial counsel=s conduct.  See Bone v. State, 77 S.W.3d 828, 830
(Tex. Crim. App. 2002).  When there is no
proper evidentiary record developed at a hearing on a motion for new trial, it
is extremely difficult to show that trial counsel=s performance was deficient.  See id. at 833.  If there is no hearing or if counsel does not
appear at the hearing, an affidavit from trial counsel becomes almost vital to
the success of an ineffective-assistance claim. 
Stults v. State, 23 S.W.3d 198, 208B09 (Tex.
App.CHouston
[14th Dist.] 2000, pet.
ref=d). 








In this case, appellant first complains of ineffective
assistance during the guilt/innocence phase of trial because trial counsel did
not challenge Beverly Allen=s qualifications as a sexual assault nurse=s aide or the facts to support her
opinion that T.W.=s female sexual organ was penetrated.  Appellant asserts there is no evidence Allen
was qualified to express an opinion on an ultimate issue in the case, namely
penetration.  Allen stated she was the
manager of the emergency room at St. Joseph Regional Health Center.  She is a registered nurse and worked as an
emergency room nurse for thirteen years. 
She completed an eight-week training course and clinical work to become a
sexual assault nurse=s aide; however, Allen was not certified by the Attorney
General=s office.  Appellant=s trial counsel elicited from Allen
that she was the main sexual assault nurse at St. Joseph, that she trained other
nurses, and that she had been administering these exams since 1991.  Allen testified to the examination she
performed on T.W. and stated that, based on the information she was given about
the case,[4]
T.W. had been penetrated.  

In the face of a silent record, this court will not speculate
about why trial counsel did not challenge Allen=s qualifications outside the presence
of the jury or question the basis for her opinion on the issue of
penetration.  See Jackson, 877
S.W.2d at 771.  Because the record is
silent regarding any explanation for counsel=s actions, we cannot conclude
appellant has met his burden to overcome the strong presumption of reasonable
assistance.  See Freeman v. State,
125 S.W.3d 505, 506B07 (Tex. Crim. App. 2003). 


Appellant also asserts trial counsel was ineffective during
the punishment phase because counsel opened the door to and did not object when
the prosecutor explained how the parole law would apply to appellant.  In particular, appellant cites the following
argument made by trial counsel:

I think if you will look at that amount of time,
serving 25 years in prison, [sic] is quite a bit.  Granted, there=s a
possibility of Mr. Hawkins making parole, but in most cases you=re probably going to serve that full 25 years.  Mr. Hawkins is 33 years old right now.  If he serves the full 25 years, he=ll be 58 years old when he gets out.  That=s almost
a quarter of a century behind bars C a
quarter of a century in prison and that=s a long
time and that=s a large chunk of Mr. Hawkins= life, and that=s a
pretty severe punishment.  By the time C If [sic] you assess a punishment of 25 or even 30
years for Mr. Hawkins, he=s going to be in his late fifties or early sixties when
he gets out.  He=s going to serve a large part of his life in
prison.  








Appellant claims that, had trial counsel not opened the door,
the prosecution would not have been allowed to discuss parole law as it applied
to appellant.  See Tex. Code Crim. Proc. Ann. art. 37.07, ' 4(a) (Vernon Supp. 2004) (stating
that jury may not consider parole law as it applies to a particular
defendant).  After trial counsel=s statement, the prosecutor provided
the following explanation of the parole law, without objection:

Mr. Reed tells you that if you give him the minimum
sentence, he=s going to serve all 25 years.  Well, that=s not
true.  It could be if he acts up like he
did before, but the parole charge in this case tells you he gets out after
twelve-and-a-half.  If he behaves, he=s eligible.  And
I don=t want you to go back in the jury room and consider
parole.  The jury charge tells you not
to.  I=m only
responding to his argument.  But a
minimum sentence in this case would be a travesty.  Anything close to the minimum sentence in
this case would be a travesty. 

 

Appellant contends that, had the prosecution not explained
how appellant could be released for good behavior after serving half of his
sentence, the jury might not have sentenced him to life imprisonment.

As with appellant=s first complaint of ineffective
assistance of counsel, the record contains no evidence of the reasoning or
strategy underlying trial counsel=s actions.  In the face of a silent record, this court
will not speculate why trial counsel discussed parole law as it applied to
appellant or why trial counsel did not object when the prosecutor continued
that discussion in closing argument.  See
Jackson, 877 S.W.2d at 771.  In the
absence of any evidence to the contrary, we cannot conclude the performance of
appellant=s trial counsel during the punishment
phase was deficient.  See Freeman,
125 S.W.3d at 506B07.  

Having found both alleged
deficiencies forming appellant=s ineffective assistance claim to be without support in the
record, we have no basis to grant relief. 
Accordingly, we overrule appellant=s first issue.








                                                   B.  Legal Insufficiency Claim

In his second issue, appellant
contends the evidence is legally insufficient to support his conviction for
sexual assault.  Specifically, appellant
argues the prosecution did not prove the element of penetration.  

In
evaluating a legal-sufficiency challenge, we view the evidence in the light
most favorable to the verdict.  Wesbrook
v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  The issue on appeal is not whether we, as a
court, believe the State=s
evidence or believe that appellant=s
evidence outweighs the State=s
evidence.  Wicker v. State, 667
S.W.2d 137, 143 (Tex. Crim. App. 1984). 
The verdict may not be overturned unless it is irrational or unsupported
by proof beyond a reasonable doubt. Matson v. State, 819 S.W.2d 839, 846
(Tex. Crim. App. 1991).  The jury, as the
trier of fact, Ais the
sole judge of the credibility of the witnesses and of the strength of the
evidence.@  Fuentes v. State, 991 S.W.2d 267, 271
(Tex. Crim. App. 1999).  The jury may
choose to believe or disbelieve any portion of the witnesses=
testimony.  Sharp v. State, 707
S.W.2d 611, 614 (Tex. Crim. App. 1986). 
When faced with conflicting evidence, we presume the trier of fact
resolved conflicts in favor of the prevailing party.  Turro v. State, 867 S.W.2d 43, 47 (Tex.
Crim. App. 1993).  Therefore, if any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt, we must affirm.  McDuff v. State, 939 S.W.2d 607, 614 (Tex.
Crim. App. 1997).








To
convict a defendant of sexual assault, the State must prove the defendant
intentionally or knowingly caused the penetration of the sexual organ of
another person by any means, without that person=s
consent.  See Tex. Pen. Code Ann. '
22.011(a)(1)(A) (Vernon 2003).  The
indictment in this case alleged appellant intentionally and knowingly, by the
use of physical force and violence and by threatening to use force and violence
which T.W. believed he had the present ability to execute, caused the
penetration of the female sexual organ of T.W. by inserting his penis without
her consent.  The Texas Penal Code does
not define the terms Afemale
sexual organ@ or Apenetration.@  Words not specifically defined by the
legislature are to be understood as ordinary usage allows, and jurors may thus
freely read statutory language to have any meaning which is acceptable in
common parlance.  See Vernon v. State,
841 S.W.2d 407, 409 (Tex. Crim. App. 1992). 
When used in the context of the sexual assault provisions of the Penal
Code, Apenetrate@ may mean
Ato enter
into@ or Ato pass
through.@  See id.  Therefore, mere contact with the outside of
an object does not amount to a penetration of it.  Id. 
On the other hand, penetration of the female sexual organ does not
necessarily require proof of entry into the vaginal canal.  See id.  Penetration occurs so long as contact with
the female sexual organ could reasonably be regarded by ordinary English
speakers as more intrusive than contact with outer vaginal lips.  See id.  Proof of the slightest penetration is
sufficient.  See Nilsson v. State,
477 S.W.2d 592, 595 (Tex. Crim. App. 1972).

Appellant
argues the evidence is legally insufficient because T.W. did not testify that
she was penetrated by her assailant, but rather stated that he attempted
penetration and was unsuccessful. 
Although T.W. did testify that appellant was unable to fully penetrate
her despite several attempts, she also stated that Ahe really
didn=t get
very far, but he did definitely penetrate.@  Her testimony, standing alone, is sufficient
evidence of penetration.  See Garcia
v. State, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978) (panel op.).  








Appellant
also contends Beverly Allen testified she observed no internal injuries to the
vaginal mucosa.  However, when asked
whether she thought the facts of this case could be described as penetration,
Allen responded that penetration had occurred here even though appellant was
not successful in penetrating Aall the
way into the cervical os.@[5]  In addition, Allen identified State=s Exhibit
8A as the swab taken from T.W.=s cervical
os, which Allen stated is inside the female sexual organ.  Brady Mills, a criminalist with the Texas
Department of Public Safety, testified that the DNA profile from the sperm cell
fraction on the vaginal swab was consistent with both the DNA of T.W.=s
boyfriend and of appellant.  While more
of the semen sample was characteristic of T.W.=s
boyfriend, appellant could not be ruled out as a secondary contributor to the
sample.

Based on
this evidence, we conclude that a rational trier of fact could have found
beyond a reasonable doubt that appellant penetrated T.W. 

                                                  C.  Factual Insufficiency Claim

Under his second issue, appellant
also briefly mentions the term factual sufficiency and states that Athe jury=s verdict of guilty for sexual
assault was so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust.@  However, appellant
does not cite facts from the record or any legal authority pertinent to a
factual-sufficiency challenge. 
Nevertheless, in the interest of justice, we will review the factual
sufficiency of the evidence.  

When
reviewing a factual-sufficiency challenge, we must discuss the evidence
appellant claims is most important in allegedly undermining the jury=s
verdict.  Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App.
2003).  Assuming appellant is raising the
same argument regarding the element of penetration under a factual-sufficiency
analysis as under his legal-sufficiency challenge, we cannot say, after viewing
all the evidence without the prism of Ain the light most favorable to the
prosecution,@ that the verdict should be set aside
because it is Aso contrary to the overwhelming
weight of the evidence to be clearly wrong and unjust.@  Johnson v. State, 23 S.W.3d 1, 6B7 (Tex. Crim. App. 2000).  








Having
found the evidence legally and factually sufficient to support appellant=s
conviction, we find no merit in appellant=s second
issue. 

We affirm
the trial court=s
judgment.

 

 

/s/        Kem Thompson Frost

Justice

 

Judgment rendered and Memorandum Opinion filed May
13, 2004.

Panel consists of Chief Justice Hedges and
Justices Frost and Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 











[1]  Effective
September 1, 2003, Brazos County is no longer a part of the district over which
the First and Fourteenth Courts of Appeals have jurisdiction.  See Act of May 1, 2003, 78th Leg.,
R.S., ch. 44, '' 1B2, 2003 Tex. Gen. Laws 81.  The Act applies to cases in which the
transcripts were not filed before the effective date of the Act, September 1,
2003.  See id.  Because the record in this case was filed
before the effective date of the Act, we have jurisdiction over this case.





[2]  The indictment
contained enhancement paragraphs for appellant=s 1990
conviction for aggravated assault on a peace officer and a 1989 conviction for
burglary of a habitation.





[3]  Appellant
requests this court reverse and remand for a new trial if it finds ineffective
assistance.  When the error occurs during
the punishment phase, however, the conviction is retained, but the judgment is
reversed and the case remanded for a new punishment hearing.  See Hagens v. State, 979 S.W.2d 788,
792 (Tex. App.CHouston [14th Dist.] 1998, pet. ref=d).





[4]  It is unclear
from the record whether Allen=s opinion included information T.W. gave Allen at the
time of the examination, information Allen heard when T.W. testified, or
information the prosecutor asked Allen to assume about what T.W. described.





[5]  Allen
testified:

 

Q: Given the information that you were given about
this particular case C and let me ask you to assume that the victim in this
case described repeated attempts of penetration that were not ultimately
successful C

A: Yes, sir.

Q: C where the defendant was simply too big C was trying to push himself inside and got to a point
where he could not get any further, can you describe to the jury what that
sounds like to you?

A: It=s usually where the penis is too large or the vaginal
mucosa is too dry for penetration to go all the way into the cervical os.  So what you have is an actual continued
jamming against the pubic symphysis, which is this area right in here where the
bones actually come together.  And if it=s real dry, it=s
difficult for penetration to go all the way through.

Q: Is what I have described and what you heard from
the victim in this case, does that describe penetration to you?

A: Yes, it already went past C it goes past the majora and minora and into the
vaginal opening and that=s penetration. 
Penetration occurs anytime it goes into the female organs, which majoras
are.