

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-06-00176-CR
_____

CHRISTY CARLISLE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 33255-B

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Having been convicted by a jury of aggravated robbery and sentenced to eighteen years' confinement, Christy Carlisle appeals. We affirm the conviction.

## I. Sufficiency of Evidence

Carlisle's first three points of error[1] contest the legal and factual sufficiency of the evidence to sustain her conviction. Trial on the merits took about one day, and we will begin our analysis by summarizing the pertinent evidence and testimony.

On May 25, 2006, around 9:00 p.m., two women with knives accosted Jose Moreno at a Nu-Way gas station parking lot in Longview. They demanded his money, and Moreno gave them all that he had (between $40.00 and $50.00). Moreno said both women were African-American; one stood beside the driver's side window of his automobile and held a knife to his neck while the other woman either leaned through the passenger window or leaned through the passenger door and held a knife to Moreno's side. After Moreno gave them the money they demanded, the women were observed leaving the parking lot in a van.

Later, when police stopped the van, Moreno was summoned to the scene of the stop. He identified the driver of the van (Carlisle's sister, Lakesha Taylor) as one of the women who held him

---

[1]Carlisle claims, in distinct points, the evidence was 1) legally insufficient under the applicable federal standard; 2) legally insufficient under the applicable state standard; and 3) factually insufficient under the applicable state standard. Because in *Griffin v. State*, 614 S.W.2d 155, 158–59 (Tex. Crim. App. [Panel Op.] 1981), the Texas Court of Criminal Appeals adopted the *Jackson v. Virginia*, 443 U.S. 307, 319 (1974), standard for legally sufficient evidence, we will conduct a single analysis of the legal sufficiency of the evidence.

up and identified the passenger, Lavanda Bigham, as a woman Moreno had seen in the Nu-Way, before the robbery. Carlisle was not among the women in the van.

Sisters, Dora Davis and Cora Davis, were behind Moreno in the checkout line inside the Nu-Way and exited the store behind Moreno. As Dora was getting in the passenger side of the Davis vehicle, she could see and hear the robbery. Dora saw a woman hold a knife to Moreno's throat; she could see another black woman at the passenger side of Moreno's vehicle, but Dora could not tell if she had a knife. Dora heard the women demand Moreno's money. Dora saw the women take the money from Moreno and drive off in an older blue van. She saw the two robbers, along with a third person driving, travel East on Avalon Street. Dora identified Carlisle as the woman at Moreno's passenger door.

Our review of the legal sufficiency of the evidence requires us to consider all the evidence in the light most favorable to the verdict; we then ask whether a rational jury could have found the essential elements of aggravated robbery beyond a reasonable doubt. *Jackson*, 443 U.S. at 318–19; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19). Carlisle was accused of aggravated robbery: committing theft while using or exhibiting a deadly weapon. *See* TEX. PENAL CODE ANN. § 29.03 (Vernon 2003). Here, two witnesses identified Carlisle as one of two women with knives who threatened Moreno with at least one knife and took his money. The evidence is legally sufficient.

3

Our review of the factual sufficiency of the evidence entails reviewing of the evidence in a neutral light and determining whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is so against the great weight and preponderance of the conflicting evidence as to be clearly wrong and unjust. *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006). The jury, as the finder of fact, is the sole judge of the weight and credibility of the witnesses' testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979). Carlisle presented no testimony in her case-in-chief to rebut the State's evidence. Through cross-examination of the State's witnesses, she tried to subvert the eyewitness testimony and stress the fact that Carlisle was not among the women occupying the van when it was stopped. We find the evidence summarized above to be factually sufficient to support the conviction.

## II.    Missing Exhibits Are Not Necessary to Resolution of This Appeal

Sometime between Carlisle's trial and the compilation of this appeal's record, several of the trial exhibits were apparently lost or misplaced; they could not be found. Carlisle complains on appeal that this situation of the missing exhibits warrants a new trial. We abated this appeal to the trial court, which held a hearing on the missing exhibits. Most of the exhibits, such as photographs, were able to be reproduced and introduced into a supplemental record with the parties' agreement. However, three of the trial exhibits were not able to be duplicated: a knife introduced into evidence,

4

a videotape from Officer Lanie Smith's vehicle showing the stop and arrest of the three women, and a sketch drawn by Dora while she testified.

This situation is governed by Rule 34.6(f) of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 34.6(f). The pertinent parts of that rule provide that an appellant may get a new trial if he timely requests a reporter's record but (1) a significant part of the record or a significant exhibit, through no fault of the appellant, has been lost or destroyed, (2) the lost or destroyed portion of the record is necessary to the resolution of the appeal, and (3) the lost or destroyed part of the record cannot be adequately reproduced or duplicated to the trial court's satisfaction. *Id*. Where an appellant may meet the other requirements of Rule 34.6(f), but fails to show the missing portion of the record is necessary to his appeal's resolution, a new trial is not required. *See Routier v. State*, 112 S.W.3d 554, 571–72 (Tex. Crim. App. 2003); *Issac v. State*, 989 S.W.2d 754, 757 (Tex. Crim App. 1999). The question of whether a missing portion of the reporter's record is necessary to the appeal's resolution is, essentially, a harm analysis. *Issac*, 989 S.W.2d at 757. If the missing portion of the record is not necessary to the appeal's resolution, then the loss of that portion of the record is harmless and a new trial is not required. *Id*.

*The Missing Exhibits*

A folding knife with a black handle was admitted into evidence by the State. Officer Ben Kemper testified that the knife admitted into evidence at trial was found on Taylor's person. When Moreno came to the scene where the van had been pulled over, he identified that same knife as one

of the knives with which he was threatened. There was no other testimony directly connecting the knife to Carlisle. There was testimony that the knife shown to the jury was capable of causing serious bodily injury or death. The charge on guilt/innocence included a provision for party liability. However, the presence at trial of the actual weapon employed in such an offense is not mandatory; a conviction and a finding of use or exhibition of a deadly weapon may be acquired and upheld even if the weapon is not introduced into evidence. *See Limuel v. State*, 568 S.W.2d 309, 312 (Tex. Crim. App. [Panel Op.] 1978).

The sketch made by Dora was drawn as she testified. We are able to clearly understand her testimony and description of the scene of the crime based on the record before us. We agree with the State's description that Dora's drawing was a demonstrative aid for the jury. One of the trial prosecutors testified at the hearing on motion for new trial and rendered another drawing which he claimed was similar to the sketch drawn by Dora. Even so, the testimony about where the Davis sisters were in relation to Moreno, the store, the parking lot, and the vehicles is not vitally necessary to our resolution of this appeal. At most, that information was used by the jury to evaluate and explain witness credibility and testimony.

Carlisle was not in the van when Officer Smith stopped it. Moreno identified two of the women: Bigham had been in the Nu-Way when Moreno was there and Taylor, one of the women who held him up at knifepoint. Carlisle asserts that Moreno said something on the videotape to indicate that he had been waiting at the gas station for a mechanic; she contends that this statement

contradicts Moreno's testimony that he had been there to use the pay telephone. At most, this evidence contained on the missing videotape could have been used to impeach Moreno; we fail to find this a significant point.

Bearing in mind the state of the evidence in this case, we hold that none of these three exhibits are necessary to our resolution of this appeal. There is sufficient testimony describing the knife and its characteristics, as well as Dora's description of the scene of the crime, for us to review this case and resolve the instant appeal. As for the videotape showing the police stop of the van with Carlisle's confederates, even if Moreno could be heard giving a different reason for his being at the gas station, we fail to see how that significantly affects the rest of the evidence: to-wit, two eyewitnesses testifying that Carlisle and another woman held Moreno up at knifepoint. We overrule this point of error.

## III.     No Error in Trial Court Failing to Grant Motion for New Trial

Two months after her conviction, Carlisle moved the trial court to grant her a new trial; she was represented by her current counsel, who was appointed by the trial court after Carlisle's conviction. In her amended motion for new trial and at the hearing, Carlisle argued that her trial counsel, David Ingram, had been ineffective: she based this assertion on Ingram's alleged failure to relay a plea recommendation from the State of a four-year sentence and on a claim that Ingram had not used cross-examination questions suggested during trial by Carlisle.[2]

---

[2]Carlisle also challenged the sufficiency of the evidence in her motions; but she did not argue those points at the hearing, and we have dispensed with that claim earlier in this opinion.

We review a trial court's decision to grant or deny a defendant's motion for new trial for an abuse of discretion. *State v. Herndon*, 215 S.W.3d 901, 906–07 (Tex. Crim. App. 2007). "We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable. A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling." *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). "We must view the evidence in the light most favorable to the trial court's ruling and presume that all reasonable factual findings that could have been made against the losing party were made against that losing party. Thus, a trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling." *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004) (footnote omitted).

*Allegation of Failure to Relay Plea Recommendation*

At the hearing on her motion for new trial, Carlisle claimed that sometime before trial began, her trial attorney failed to relay to her an offer from the State to recommend a sentence of four years' imprisonment.[3] One of the prosecutors who participated in Carlisle's trial, Billy Byrd, testified at

---

[3]In support of her argument that failure to relay a plea offer constitutes ineffective assistance of counsel, Carlisle cites *Ex parte Lemke*, 13 S.W.3d 791, 795–96 (Tex. Crim. App. 2000). Lemke took a bargained sentence of forty years. Later, he found out his trial counsel had been disbarred; when that counsel was tried for unlawful practice of law (on Lemke's case), Lemke found out the prosecutor had offered sentences of twenty and sixteen years; Lemke said he would have taken one of those sentences. In that particular set of circumstances, the Texas Court of Criminal Appeals granted habeas relief to Lemke. We find the instant circumstances to be significantly different.

8

the hearing on the motion for new trial and related that it was the policy of the judge of the 124th Judicial District Court not to accept plea bargains and that any offer made by the State would only be an unbinding recommendation to the trial court. More significantly, Byrd said that an offer to recommend a sentence of only four years had never been made. The State had first offered to recommend a sentence of fifteen years' imprisonment and then had lowered the offer of recommendation to ten years. Byrd said one of Carlisle's co-defendants (who, unlike Carlisle, had no previous criminal history) had been sentenced to six years. Because Carlisle wielded a knife in the robbery, Byrd said the State would not offer to recommend less than a six-year sentence. Byrd also said that before voir dire, the State offered to recommend a sentence of six years for the charged offense of aggravated robbery. Carlisle's counsel, after consulting with Carlisle, countered with a request for six years on robbery; the State agreed.[4] But, according to Byrd, when Ingram returned to the prosecutor after relaying this offer, he said that then Carlisle wanted a recommendation of four years' imprisonment and community supervision. Byrd declined to make such a recommendation and the matter proceeded to trial. Byrd was clear, in his testimony to the trial court, that no offer of a four-year recommendation had been made by the State; rather, such an offer, to the extent it existed, had originated with either Carlisle or her counsel, not with the State. We defer to the trial evaluation of the credibility of witnesses at the hearing on the motion for new trial. *Kober v. State*, 988 S.W.2d 230, 233 (Tex. Crim. App. 1999).

---

[4]Were Carlisle convicted of robbery as opposed to aggravated robbery, she would be eligible for parole sooner. *See* TEX. GOV'T CODE ANN. § 508.145(d) (Vernon Supp. 2007).

*Failure to Cross-Examine Witnesses per Carlisle's Request*

Carlisle testified at the hearing on the motion for new trial that during her trial, she had made notes of some suggested cross-examination questions she wanted her trial counsel to pose. Trial counsel covered some of the topics she requested. For example, her trial attorney asked eyewitness Dora whether Dora had told officers she had been on the telephone when she witnessed the robbery; Dora answered in the negative. Trial counsel asked Dora why she went a certain way to get into her car (a direction which seemed to have her moving toward the robbery); she said the cars were parked right beside each other and she had no other way to go. The trial court specifically stated, in ruling on the motion for new trial, that "[trial counsel] did go into many of the issues" Carlisle suggested.

As has been stated many times, the record on direct appeal is generally not sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision making as to overcome the presumption that counsel's conduct was reasonable and professional. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *see also discussion*, *infra*. In this case, however, Carlisle did present testimony in a hearing on her motion for new trial, but she did not present testimony from her trial counsel. At oral argument before this Court, Carlisle stated that a scheduling conflict on the part of trial counsel prevented her from securing testimony from him, but she conceded she had not subpoenaed the trial attorney to the hearing on the motion for new trial.

The trial court, in ruling on the motion, seemed to give deference to the trial attorney's presumed strategy: "as to what questions to ask or not to ask, as part of trial strategy, the Court can

10

-- the appellate court is not going to question that except in rare circumstances. Further, Mr. Ingram did go into many of the issues that are raised in Motion for New Trial Exhibit No. 2 [Carlisle's list of suggested questions]" and he took "judicial notice that the policy of the 124th District Court is that there are no plea bargains in that court." The trial court pointed out that Carlisle said she did not recall an offer of four years' imprisonment being offered and the prosecutor saying it had not. He continued that "it comes down to Mr. Ingram testifying -- what he's stated at the hearing." (Making reference, we believe, to a hearing on Ingram's motion to withdraw as counsel, where Ingram said he relayed an offer of four years to Carlisle.) Finally the trial court said, "Based on a totality of the circumstances and the evidence, . . . I'm going to deny the Motion for New Trial."

Based on the record, including the trial court's stated reasons for denying the motion, and caselaw regarding ineffective assistance of counsel which the trial court clearly considered, we cannot say the trial court abused its discretion in denying Carlisle's motion for new trial. We overrule this point of error.

## IV. Inadequate Record to Find Ineffective Assistance of Counsel

In a separate point of error, Carlisle complains her trial counsel was constitutionally ineffective. Carlisle complains of her trial attorney's voir dire, his failures to object to hearsay testimony, his allegedly ineffective cross-examination of the State's witnesses, the plea offer issue previously discussed, and the failure to object to the State's use of the term "conviction" when referring to Carlisle's prior deferred adjudication sentence on other charges.

11

Claims that counsel provided ineffective assistance are evaluated under the *Strickland* two-part test requiring a showing of both a deficient performance by counsel and prejudice to the person on trial. *See Strickland v. Washington*, 466 U.S. 668, 689 (1984). A *Strickland* claim must be "firmly founded in the record" and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

As stated above, direct appeal is usually an inadequate vehicle for raising such a claim because the record is generally undeveloped for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose. *See Goodspeed*, 187 S.W.3d at 392; *Freeman v. State*, 125 S.W.3d 505, 506 (Tex. Crim. App. 2003); *Fuller v. State*, 224 S.W.3d 823, 828–29 (Tex. App.—Texarkana 2007, no pet.). This is true with regard to the question of deficient performance. We review counsel's conduct with great deference, without the distorting effects of hindsight, especially where counsel's reasons for failing to do something do not appear in the record. *Thompson*, 9 S.W.3d at 813. The Texas Court of Criminal Appeals has said that "trial counsel should ordinarily be afforded an opportunity to explain his actions" before a court finds that counsel rendered ineffective assistance. *See Goodspeed*, 187 S.W.3d at 392 n.14 (quoting *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003)); *Fox v. State*, 175 S.W.3d 475, 485 (Tex. App.—Texarkana 2005, pet. ref'd).

12

The Texas Court of Criminal Appeals has explained that appellate courts can rarely decide the issue of ineffective assistance of counsel because the record almost never speaks to the strategic reasons that trial counsel may have considered. The proper procedure for raising this claim is, therefore, almost always through habeas corpus proceedings. *Aldrich v. State*, 104 S.W.3d 890, 896 (Tex. Crim. App. 2003); *Freeman*, 125 S.W.3d at 506. Although some claims may be disposed of on direct appeal where "trial counsel's ineffectiveness is so apparent from the record," *Massaro v. United States*, 538 U.S. 500, 508 (2003); *Freeman*, 125 S.W.3d at 506, it appears from the Texas Court of Criminal Appeals' opinions that such situations are quite rare. *See Freeman*, 125 S.W.3d at 506.

In addressing Carlisle's previous point of error, we detailed much of the trial court's reasoning on denying the motion for new trial, which was based on allegations of ineffective assistance. At the new trial hearing, Carlisle primarily raised the alleged unrelayed plea offer and trial counsel's cross-examinations. As the trial court stated, much of what Carlisle would have had her attorney cross-examine witnesses was, in fact, covered by counsel at trial. There was a serious factual question as to whether any offer to recommend a sentence of four years was ever actually made. Carlisle also asserts in her brief that trial counsel performed an inadequate voir-dire examination of the jury panel. However, without any explanation by counsel as to why he did or did not pursue certain areas, we cannot say there is any error apparent on the face of this record. *Goodspeed*, 187 S.W.3d at 392.

13

We discuss the prosecution's reference to a previous deferred adjudication served by Carlisle as a "conviction" *infra*; as it pertains to her claim of ineffective assistance, we are not convinced the term as used by the State was even objectionable.  This allegation also falls victim to Carlisle's failure to present any evidence of trial counsel's reasons for what he did or did not do.

In sum, Carlisle has failed to overcome the required findings of *Strickland* and the Texas Court of Criminal Appeals cases applying that case.  She thus has failed to present a case of ineffective assistance of counsel.  We overrule this point of error.

## V.     State Used "Conviction" Referring to a Deferred Adjudication

Carlisle complains that during the punishment phase, the State referred to a previous misdemeanor deferred adjudication as a "conviction."  At punishment, the State called no witnesses; it re-offered all evidence from the guilt/innocence phase of the trial and offered a certified copy of a judgment which had placed Carlisle on deferred adjudication supervision for a 1999 charge of hindering apprehension.  Carlisle's trial attorney voiced "no objections" when the judgment was offered in evidence.  The prosecutor published the document by addressing the jury directly, saying, "Back in 1999 . . . the defendant was charged and convicted of the offense of hindering apprehension of a fugitive or an individual."  He used the word "convicted" one additional time.  Carlisle lodged no objection to this characterization of the disposition of the offense in either instance.

To preserve error for appellate review, (1) the complaining party must make a timely objection specifying the grounds for the objection, if the grounds are not apparent from the context;

14

(2) the objection must be made at the earliest possible opportunity; and (3) the complaining party must obtain an adverse ruling from the trial court. *Dixon v. State*, 2 S.W.3d 263, 265 (Tex. Crim. App. 1998). Carlisle asserts that not only was the prosecutor's comment error, it was an error affecting (as stated in Carlisle's appellate brief) "fundamental systemic requirements, [and] not capable of waiver." *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993). Carlisle claims the prosecutor acted in bad faith; she cites a case where a prosecutor was found to have acted in bad faith for failing to disclose *Brady* evidence.[5]

Assuming, arguendo, it was error for the State to make reference to the prior deferred adjudication as a "conviction," this situation does not rise to the level of error so severe as to be nonwaivable. *Marin* contemplates such errors as on a par with "laws affecting the jurisdiction of the courts" or "nonjurisdictional principles of due process and separation of powers." *Marin*, 851 S.W.2d at 279. Carlisle provides little to no argument as to why this purported error is so egregious to be analogous. Even if Carlisle had lodged objections, evidence of an offense for which a defendant received deferred adjudication is admissible during the punishment hearing at a trial for another offense. *Davis v. State*, 968 S.W.2d 368, 373 (Tex. Crim. App. 1998); *see also* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(c)(1) (Vernon Supp. 2007) (successfully completed deferred adjudication admissible at punishment phase of subsequent conviction). We are unconvinced there was any error which could have drawn an objection. Finally, the court's charge included language

---

[5]*See Ex parte Adams*, 768 S.W.2d 281, 290 (Tex. Crim. App. 1989).

15

instructing the jury not to consider any extraneous conduct unless they found the defendant had done such acts, beyond a reasonable doubt. We overrule this point of error.

## VI. No Abuse of Discretion to Deny Motion to Withdraw

Carlisle complains about the trial court's denying her request to withdraw her trial counsel. We review a trial court's denial of a motion to withdraw for abuse of discretion. *King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000). We review the trial court's ruling in light of what was before the trial court at the time the ruling was made, and we must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

About two months before trial on the merits, the trial court held a hearing on a motion brought by Carlisle's court-appointed trial counsel to have him withdrawn from the case and a different attorney appointed. Trial counsel, Ingram, related to the trial court that he had met with Carlisle on "many occasions" and that he had given her his best advice and had discussed the State's case against her. However, Carlisle did not seem to like Ingram's representation and he could not seem to satisfy her; she asked the court to permit Ingram to withdraw.

At the hearing, Carlisle was allowed to tell the trial court her complaints about the representation she was receiving from Ingram. She felt that her attorney had not argued forcefully enough to get her bond reduced at a hearing on that topic: "you [Ingram] didn't say anything to fully defend me. You said 'She da-da-da-da-da.' I think I could have did [sic] better myself." She said

16

her attorney did not have her best interest at heart and she would have a better chance with another attorney who would fight for her. She complained that when she asked Ingram if he thought she had a chance to prevail at trial, Ingram said, "No." She complained "[i]t's been negativity the whole time. You've [Ingram] said nothing positive to me." She did acknowledge that Ingram had provided her with copies of the prosecution's offense reports.

The Texas Court of Criminal Appeals has repeatedly stated that a trial judge is under no duty to search until he finds an attorney agreeable to the defendant. *Lyles v. State*, 582 S.W.2d 138 (Tex. Crim. App. [Panel Op.] 1979); *Webb v. State*, 533 S.W.2d 780 (Tex. Crim. App. 1976); *Gonzales v. State*, 532 S.W.2d 343 (Tex. Crim. App. 1976). Once the court has appointed an attorney to represent the indigent defendant, the defendant has been accorded the protections provided under the Sixth and Fourteenth Amendments and TEX. CODE CRIM. PROC. ANN. art. 26.04 (Vernon Supp. 2007), and the defendant then carries the burden of proving he is entitled to a change of counsel. *Webb*, 533 S.W.2d at 784.

At the hearing on the motion to withdraw, the State pointed out that trial counsel had attended part of Carlisle's co-defendant's trial; in the record, we have found that he made a request for a reporter's record of the trial and obtained an order granting same. The trial court stated that a change in counsel would "delay the trial of this case considerably." He said the case had been indicted ten months prior to the date of the hearing and appointing new counsel would put off trial another one to two months. He stated his experience with Ingram led him to conclude Ingram would

17

not "have somebody plead guilty if that person tells him that they are not guilty." Further, the trial court went on to say:

> Yes, he may evaluate the evidence and give [you the] benefit of his professional judgment. And bear in mind, he has considerable experience in the field of criminal law. He's tried a number of cases, tried them well, as a matter of fact. He is giving you an opinion as to what he believes under the evidence that has been presented could be the outcome. . . . I cannot see anything to be gained by changing lawyers at this stage in this case.

As for Carlisle's complaint that Ingram told her he did not think she could prevail at trial, we point out the State ultimately produced two eyewitnesses; trial counsel may well have just been candid with Carlisle. Trial counsel does a service to his client by dealing in candor; pandering by a trial counsel in telling his client only what the client wants to hear is a disservice.

We find the trial court did not abuse its discretion in denying the motion to withdraw counsel. We overrule this point of error and affirm the trial court's judgment.


Bailey C. Moseley
Justice

Date Submitted:     February 13, 2008
Date Decided:       May 14, 2008

Do Not Publish

18