

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00074-CR

JESSTIN LEE GETZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 84th District Court
Hansford County, Texas
Trial Court No. CR01710; Honorable Curt Brancheau, Presiding

April 16, 2020

## MEMORANDUM OPINION

## Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellant, Jesstin Lee Getz, appeals from his conviction by jury of the felony offense of burglary of a habitation[1] and the resulting sentence of twenty years of imprisonment.[2]  Appellant challenges his conviction through several issues, arguing the trial court erred by (1) erroneously admitting prejudicial hearsay evidence, (2) erroneously

---

[1] TEX. PENAL CODE ANN. §30.02 (West 2019).

[2] An offense under section 30.02 of the Texas Penal Code is a second degree felony punishable by imprisonment for any term of not more than twenty years or less than two years and a fine not to exceed $10,000.  TEX. PENAL CODE ANN. § 12.33 (West 2019).

admitting inadmissible evidence of prior bad acts without a limiting instruction, (3) the evidence was insufficient to support his conviction, and (4) his trial counsel failed to provide him effective assistance. We will affirm the trial court's judgment.

**BACKGROUND**

Around lunchtime on July 24, 2017, Cory Rex was heading to his home. He took a route that went past his grandfather's home so that he could check on the property while his grandfather was in the hospital. As he travelled down his grandfather's street, he saw a black Grand Prix sitting across the street near a detached garage of a home belonging to Eva and Miguel Espinosa. It was common knowledge the Espinosas did not live in the home full time and were often away. Rex recognized the car as belonging to Appellant's girlfriend and he knew Appellant often drove that car. Rex and Appellant had been close friends for many years before they had a falling out over a theft.

Rex continued to his home, switched from driving his work truck to his personal vehicle, and went back to his grandfather's home. He used his phone to take some pictures because he "assumed [Appellant] was breaking into [his] grandpa's house or that house and I figured the pictures may come in handy." He then walked along the property until he reached a retaining wall. At that point, he looked to his right and saw Appellant getting into the Grand Prix. He and Appellant made brief but direct eye contact. At trial, Rex told the jury there was no question in his mind that the person he saw was Appellant.[3] Rex went up to the vehicle but could not clearly see through the darkly tinted windows.

---

[3] Rex provided a written statement to police five days after the burglary of the Espinosa home. In that affidavit, Rex said, "The vehicle—someone was getting in the car on the driver's side and I barely got a glimpse of them between windshield frame and door frame, and like I thought, it appeared to be Jesse." At trial, Rex acknowledged that statement sounded less certain than his trial testimony, but he said, "I'm as sure now as I was then that it appeared to be Jesse, and I know Jesse quite well."

He could only see that there were two people in the car. The driver pulled away and Rex decided to follow him down an alley. Rex contacted police but lost sight of the Grand Prix.

When police were unable to locate the Grand Prix, officers investigated the reported burglary of the Espinosa home with the property caretaker, Lisha White. During their investigation, they discovered the side door to the garage was open. Inside the garage were three televisions, two of which White had seen in the home the night before when she walked through the property. Tools, a printer, a camcorder, and other items were also piled in the garage. Police also saw two benches stacked near a window that White and Eva Espinosa said were usually around a fire pit. Inside the home, police saw empty brackets where a television had previously been hanging on the wall and a large five-gallon water bottle empty with some pennies on the floor. A jewelry cabinet lock was broken. Eva Espinosa told the jury that most of the jewelry was costume jewelry, with the exception of some personal family heirlooms.

The day following the burglary, a Perryton police officer initiated a traffic stop of the black Grand Prix identified by Rex as being involved in the burglary of the Espinosa home. Appellant, a passenger in the car, was arrested based on a warrant that had been issued in connection with that burglary. The driver denied consent to search the Grand Prix.

**ANALYSIS**

**ISSUE ONE—ADMISSION OF EVIDENCE REGARDING CONSENT TO SEARCH VEHICLE**

In his first issue, Appellant argues the trial court erred in permitting the admission of "highly prejudicial inadmissible hearsay" into evidence, leaving the jury with a false

impression of the record. Appellant challenges the trial court's admission, over his hearsay objection, of a police officer's statement that "I believe I overheard Mr.—or Sergeant Villareal speaking to Mr. Rodriguez about trying to search the vehicle. But I believe he denied that consent." The State responds that the trial court did not err because the statement was not hearsay but rather, was offered to explain why the officers did not attempt to search the vehicle after Appellant's arrest. The State further responds that even if the statement was hearsay, hearsay is admissible to show lack of consent to search.

The State asked the trial court to address the challenged statement during the testimony of the Perryton police officer who arrested Appellant. The State told the court it wished to introduce the statement not for the purpose of proving the truth of the matter asserted but rather, to explain to the jury why the Perryton officer did not search the Grand Prix when Appellant was arrested. The State noted that during opening statement, counsel "made the comment to the jury that the police could have searched different places and they did not. And that's actually a statement I objected to, if the Court remembers." The State argued it felt the jury was owed an explanation as to why the officer did not attempt to conduct a search at the time of the arrest. The court overruled Appellant's hearsay objection and permitted the statement into evidence.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Hearsay is generally inadmissible. TEX. R. EVID. 802. To be admissible, the statement must fit into an exception provided by a statute or the Texas Rules of Evidence. TEX. R. EVID. 802. The admissibility of an out-of-court statement under an exception to the general hearsay exclusion rule is a matter that lies within the

4

sound discretion of the trial court. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003) (citing *Lawton v. State*, 913 S.W.2d 542, 553 (Tex. Crim. App. 1995)). A reviewing court should not reverse a trial court's ruling unless a clear abuse of discretion is shown. *Id.* (citation omitted). An abuse of discretion occurs "only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Id.* (citing *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992)).

Here, we find it was within the trial court's discretion to conclude the statement in question was not offered to prove the truth of the matter asserted. The trial court could have determined it was irrelevant whether the driver of the car actually denied consent to search the car and that what was relevant was the fact the police officers did not conduct a search of the Grand Prix because they believed they could not do so. *Campbell v. State*, 910 S.W.2d 475, 480 (Tex. Crim. App. 1995) (citation omitted).

We overrule Appellant's first issue.

### ISSUE TWO—ADMISSION OF EVIDENCE OF PRIOR OFFENSES OR BAD ACTS

Via his second issue, Appellant argues the trial court erred in permitting admission of evidence of his prior bad acts, specifically theft, without providing to the jury a limiting instruction.[4] The State responds that the trial court did not err because it did provide a limiting instruction in the charge to the jury. Moreover, the State asserts any error in the admission of the evidence was harmless since the evidence tended to help Appellant because it showed the State's main witness, Rex, was biased against Appellant.

---

[4] While it is unclear from his brief whether Appellant's complaint is that the trial court erred in failing to give a limiting instruction contemporaneously with the admission of the evidence of a prior bad act or in the final charge to the jury, we construe his argument as being that the trial court erred by not giving a limiting instruction contemporaneous with the admission of the evidence.

5

Assuming Appellant's contention is that the trial court erred in admitting the objectionable evidence without contemporaneously providing a limiting instruction, we find such error, if any, was waived. To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling (unless those grounds are apparent from the context of the request, objection, or motion). TEX. R. APP. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). *See also Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (discussing preservation of error). The purpose of a timely objection is to "give to the trial court or the opposing party the opportunity to correct the error or remove the basis for the objection." *Martinez v. State*, 22 S.W.3d 504, 507 (Tex. Crim. App. 2000).

During opening statements to the jury, both the State and the defense referenced the former long-time friendship between Rex and Appellant and the fact that the two were no longer friends. The State asked Rex on direct examination whether he and Appellant were still friends and Rex said they were not. During cross-examination, defense counsel asked similar questions and at one point asked whether their friendship had gone "sour." Defense counsel then asked whether Rex routinely paid attention to Appellant's whereabouts, his friends, and the Grand Prix. Rex answered affirmatively. The State then asked for the jury to be excused and argued to the court that the defense had opened the door to allowing evidence of why Rex and Appellant were no longer friends. The State argued that by asking Rex about paying attention to Appellant's whereabouts,

6

friends, and the Grand Prix, along with the evidence that he and Appellant were no longer friends, the defense left the jury with a false impression from which the jury would be free to infer all types of reasons for Rex's behavior and the dissolution of the friendship.

The court heard testimony from Rex outside the presence of the jury so that it could determine the admissibility of the prior bad act evidence. Rex stated he and Appellant were friends until his shop and car were broken into. Items were taken and sold. Rex said he found out Appellant was the person who committed these acts and he agreed that was why he had concern over Appellant and why he chose to "keep tabs" on him. It is also the reason he chose to take pictures the day he saw the Grand Prix near the Espinosa home.

After hearing Rex's testimony outside the presence of the jury, the court asked questions of the State and defense counsel. The court recognized the relevance of the testimony, and noted it would show Rex's bias against Appellant, but also worried about the prejudicial effect of allowing evidence of a prior theft in a burglary case. Defense counsel said she believed this evidence would be "totally devastating" if it were to be admitted. The State responded that it believed that if Rex's testimony were left as-is, it would appear to the jury that Rex had some unjustified bias against Appellant. The court took the matter under advisement overnight, stating that while it was inclined to permit some evidence explaining Rex's dislike of Appellant, it desired to properly limit that evidence.

The next morning, the court again discussed the matter with the parties, saying in part that it did not believe the defense had opened the door to the admission of evidence concerning the prior bad act of theft. Rather, the court opined, a question concerning

Rex's bias had been raised and the State was entitled to explore that bias. As part of that exploration, the State would be able to introduce evidence of the theft if it had evidence to show beyond a reasonable doubt that the theft occurred. Furthermore, if Rex denied he was biased toward Appellant, the facts of the extraneous offense of theft would be admissible to show bias. If this occurred, Appellant would be entitled to a jury instruction limiting the consideration of the evidence solely for the purpose of judging bias. The court also told the State it would permit Rex to testify that he believed Appellant stole from him. The parties agreed they would proceed in that manner.

At the end of that discussion, the court told defense counsel, "And, Counsel, I'm going to give the jury a limiting instruction on any evidence of bias and it's offered -- any allegation of prior theft is being offered to the jury solely for purposes of assessing bias and for no other reason, okay, just to give you a heads up." The court told defense counsel she could request the instruction, but defense counsel said, "if you'll announce it, that would be—." The court agreed and said, "I'll give it to them then." At the time, no further discussion was had as to when the trial court would give that instruction.

With the jury back in the jury box, Rex was called to the witness stand and the State asked him if it was fair to say that he had a bias against Appellant. Rex answered "[t]hat is correct." When asked why, Rex said, "[b]ecause he has stolen from me." At that point, defense counsel did not request a limiting instruction nor did she remind the court that it said it would give the jury such an instruction. Instead, defense counsel asked questions of Rex about his belief that Appellant stole from him, his anger toward Appellant over that incident, and his desire to "get even" with Appellant.

8

By failing to request the trial court give a contemporaneous limiting instruction as to the basis for admission of the objectionable evidence, or by failing to remind the trial court of its commitment to give such an instruction, Appellant waived any objection as to the timing of that instruction.

Furthermore, even if Appellant's contention is that the trial court erred in permitting Rex to testify regarding his belief that Appellant stole from him, without the benefit of a limiting instruction in the court's charge, we note that the record indicates the trial court did include in its charge the following limiting instruction:

> You are instructed that if there is any testimony before you in this case regarding the Defendant having committed offenses other than the offense alleged against him in the indictment, or those circumstances surrounding the alleged offense, you may only consider it in determining the bias of the witness in connection with the offense alleged against the Defendant in the indictment and for no other purpose. You may not consider the evidence of other offenses as a substitute for proof that the Defendant committed the crime charged nor as proof of the Defendant's bad character or that he acted in conformity therewith.

Rule 105 of the Texas Rules of Evidence requires a limiting instruction, upon proper request, whenever evidence is admitted for one purpose, but it would not be admissible for another purpose. TEX. R. EVID. 105(a). When a trial court errs by failing to provide a contemporaneous limiting instruction, that error is non-constitutional and subject to a harmless error analysis pursuant to Rule of Appellate Procedure 44.2(b). *Jones v. State*, 119 S.W.3d 412, 424 (Tex. App.—Fort Worth 2003, no pet.) (citations omitted). A non-constitutional error is harmless unless it affected a defendant's substantial right. *Id.* A substantial right is affected "when the error had a substantial and injurious effect or influence in determining the jury's verdict. A criminal conviction should

not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has a fair assurance that the error did not influence the jury, or had but a slight effect." *Id.* (citation omitted).

Here, at the end of the discussion regarding the admission of Rex's testimony about his belief that Appellant stole from him and his resulting bias, the court told defense counsel that it would provide to the jury a limiting instruction, informed defense counsel of the language of that instruction, and allowed her the opportunity to request it or allow the court to provide it. Counsel elected to allow the court to provide that limiting instruction. Counsel did not raise the issue of the limiting instruction during Rex's testimony. As such, because a limiting instruction was given, we find any error pertaining to the lack of an instruction, whether contemporaneous with the introduction of the objectionable evidence or otherwise, to be harmless.

Accordingly, we overrule Appellant's second issue.

### ISSUE THREE—SUFFICIENCY OF THE EVIDENCE TO SUPPORT CONVICTION

In his third issue, Appellant argues the evidence was factually insufficient to support his conviction. Texas no longer applies a factual sufficiency review to challenges of evidence requiring proof beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010) (finding the factual sufficiency standard is indistinguishable from the *Jackson v. Virginia* legal sufficiency standard). We will therefore review the evidence in the record under the *Jackson v. Virginia* standard. *See Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

Under that standard, when assessing the sufficiency of the evidence to support a criminal conviction, we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences to be drawn therefrom, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). Under this standard, we review all of the evidence in the light most favorable to the verdict and decide whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson,* 443 U.S. at 319; *Brooks*, 323 S.W.3d at 902. The jury is the sole judge of witness credibility and of the weight given to any evidence presented; consequently, the reviewing court must defer to the jury's determinations as to both. *Brooks*, 323 S.W.3d at 899. The sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

Evidence may be circumstantial or direct, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Additionally, we allow juries to draw multiple reasonable inferences from the evidence presented at trial. *Id.* When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict. *Jackson*, 443 U.S. at 326. In a circumstantial evidence case, it is not necessary that every fact point directly and independently to the guilt of the accused. *Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006). It is sufficient if the finding of guilt is warranted by the cumulative force of all the incriminating evidence. *Id.* (citation omitted). And, a reviewing court is permitted to consider all the evidence in the record, whether properly or improperly admitted, in

making its sufficiency determination. *Id.* (citing *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999)).

A person is guilty of burglary if, without the effective consent of the owner, he enters a building or habitation with the intent to commit a felony, theft, or an assault. TEX. PENAL CODE § 30.02(a)(1). Proof of evidence of entry is not required to sustain a burglary conviction. *Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006). And, if a jury is instructed under the law of parties as it was here, the State does not have to prove a defendant himself entered the habitation. *Powell,* 194 S.W.3d at 507.

Here, Rex testified he saw Appellant, his former close friend, bending down and getting into a Grand Prix near the Espinosa home on the day of the burglary. Rex recognized the vehicle as belonging to Appellant's girlfriend and one Appellant often drove. He told the jury that while he only caught a "brief glimpse" of the person entering the vehicle, he knew the person he saw was Appellant. Rex also testified that when he approached Appellant after he got into the car, Appellant quickly drove away. The record further shows Appellant was located in that same Grand Prix the next morning. A Perryton police officer testified an arrest warrant for burglary of a habitation had been issued for Appellant and he was looking for both Appellant and the Grand Prix. He had previously stopped Appellant in the vehicle and knew that it belonged to Appellant and his girlfriend. When he stopped the Grand Prix in the early morning hours following the burglary, Appellant was a passenger in the vehicle.

Rex told the jury that when he first passed by the Espinosa home, the small side door to the garage was closed. But, when White, the property caretaker, arrived the day of the incident, she said the "door was open." White also opined that no one else

12

authorized to be in the home had arrived at the home when White observed the door as being "wide open." The responding police officer also testified the door was open when he arrived. White later observed that the front garage side door "had been busted in."[5]

A police officer and White testified that when they went into the Espinosa garage, televisions, tools, and other items were stacked inside. Photographs of all of these items were admitted into evidence at trial. White identified the large television as having been hanging on the wall the previous evening, the middle television as the one previously in the bedroom, and a third television from an unknown location.[6] Eva Espinosa also identified the items and said those items were not in the garage when she was in the home a few weeks prior. She also told the jury the cabinet in the garage was usually kept closed but the photographs showed it was open when a police officer and White went into the garage. When White and a police officer left the garage, they also discovered the "backdoor was unlocked."

Upon entry into the home, the officer saw empty brackets on the wall inside the house where a television appeared to have been previously located. White testified she was at the Espinosa home the night before and the "TV was on the walls. . . [e]verything was the exact same when I had been there probably three days ago." A large water bottle was empty with "a trail of change coming out . . . [y]ou could tell that somebody— something dropped change on the way out." White testified the bottle usually had some money and loose coins in it. White and the police officer also saw two benches stacked

---

[5] The responding officer testified he did not recall seeing any signs of forced entry.

[6] Eva Espinosa testified the medium-sized television was the television that had been hanging in her living room, that the largest television had been in her back bedroom, and that the smallest television had been kept in one of the front bedrooms in a closet.

outside a window that had been broken but not repaired. White said those benches were usually around the firepit and not under the window. White also testified that the lock on Eva Espinosa's jewelry cabinet was broken and Eva Espinosa testified the jewelry she kept there was missing and had not been returned. The officer testified there were "empty spots" where jewelry might have been, but he could not say anything was missing.

White testified she knew Appellant because she attended school with him. She also said she had seen him driving the Grand Prix with the window down and she identified the Grand Prix in the photograph admitted into evidence as looking like the car in which she had seen Appellant. Eva Espinosa testified she knew Appellant because he had been friends with and dated one of her daughters. She told the jury Appellant had been in her home several times; however, he had not been in her home since her oldest daughter graduated high school and that she had not given Appellant permission to be in her home.

The facts of this case are somewhat analogous to those in *Powell*, 194 S.W.3d 503. There, the complainant took lunch to her husband and returned to her home about fifteen minutes later. When she arrived home, she realized her house had been burglarized and a truck she did not recognize was parked in the driveway. Several personal items were stacked near the door and her husband's wallet was missing. The complainant called the police. An unknown man approached her and he was verbally abusive before quickly leaving without taking any of the property that was placed near the door. Police later found the truck and located the defendant shortly thereafter. After his arrest, the defendant admitted he owned the truck. While the defendant was wearing a different shirt at the time of the arrest than what the complainant described, another

witness testified she had seen a Caucasian man and a Hispanic man switch shirts on the sidewalk near the burglarized home. The woman testified the Caucasian man she had seen matched the defendant's general description but could not positively identify him at trial. *Id.* When police searched the truck, they found a pawn ticket with the name "Pete Perez" on it. Officers also found a missing wallet on the side of the road along the path the defendant had taken when he fled the complainant's home. At trial, the complainant identified the defendant as the person who verbally accosted her, and another witness testified that a "Pete Perez" pleaded guilty to the same burglary. The jury returned a verdict of guilty.

On appeal, the Second Court of Appeals reversed that conviction finding the evidence insufficient to support the conviction for burglary of a habitation. On the State's *Petition for Discretionary Review*, the Court of Criminal Appeals reversed the lower court's opinion and remanded the cause for further proceedings. In reversing the court of appeals, the Court noted several facts similar to the facts in this case: (1) that the complainant identified the defendant as the man she saw on her property; (2) he was present at the crime scene and his truck was in the driveway of the home; (3) he was later found in possession of the truck and admitted to owning it; and (4) he quickly left the burglarized home after a confrontation with the complainant. The Court noted that the lack of fingerprint or DNA evidence inside the complainant's house was irrelevant because it was not necessary for the defendant to enter the complainant's home to be found guilty of burglary of a habitation under the law of parties. *Id.* at 508.

Given the evidence before the jury, i.e., that Appellant was outside the detached garage of the Espinosa home, that he entered the Grand Prix parked near the garage,

15

that another person was in the Grand Prix when Appellant got into it, that the Grand Prix departed rapidly from the scene when confronted, that circumstances surrounding the Espinosa home indicated household items had been quickly removed from the home into the garage, and that certain items, including coins, were taken from the home, we find a rational jury could have inferred Appellant was at least a party to burglary of the Espinosa home. Thus, viewing the evidence in the light most favorable to the verdict, we find a rational fact finder could have found, beyond a reasonable doubt, that Appellant burglarized the Espinosa home.

We overrule Appellant's third issue.

### ISSUE FOUR—INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution guarantees the right to reasonably effective assistance of counsel in all state criminal prosecutions. *McMann v. Richardson*, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970). We examine ineffective assistance of counsel claims by the standards articulated in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), as adopted by Texas in *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986). This standard applies to both the guilt-innocence and punishment phases of all criminal proceedings. *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999).

Under this standard, in order to show a violation of an accused's constitutional right to the effective assistance of counsel, an accused has the burden to show, by a preponderance of evidence, that (1) trial counsel's performance was deficient, i.e., it fell below the prevailing professional norms and (2) the deficiency prejudiced the defendant, i.e., but for the deficiency, there is a reasonable probability that the result of the

16

proceeding would have been different. *See Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The failure to make a sufficient showing under either prong defeats a claim for ineffective assistance of counsel. *Lampkin v. State*, 470 S.W.3d 876, 897 (Tex. App.—Texarkana 2015, pet. ref'd) (citing *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003)).

To overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and a presumption that the challenged action might be considered valid trial strategy; *Strickland*, 466 U.S. at 689, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 814. Further, judicial review must be highly deferential to trial counsel's discretion and judgment in order to avoid the deleterious effects of hindsight. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984).

Generally, in a case in which an ineffective assistance claim is made, "the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the presumption that counsel's conduct was reasonable and professional." *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). This is typically the case because a silent record provides no explanation for counsel's actions and decisions and, therefore, will not overcome the strong presumption of reasonable assistance. *Freeman v. State*, 125 S.W.3d 505, 506 (Tex. Crim. App. 2003).

Appellant argues his counsel was ineffective because she made six "crucial omissions," identified as follows: (1) counsel failed to object to the State's redirect on voir dire; (2) she failed to object to the court striking a potential juror; (3) she did not ask for or remind the Court to provide to the jury a contemporaneous limiting instruction; (4) she did not move for a new trial; (5) she did not move for a directed verdict; and (6) she failed to move for a verdict notwithstanding the evidence. Upon our review of the record, we disagree with Appellant's contentions.

As the State notes, the record is silent with regard to the reasons or strategies utilized that led counsel to make the choices she made. We do not have the benefit of a hearing concerning counsel's conduct and strategies. As such, the record does not reflect counsel's reasons. The decisions made by counsel pertaining to how a case should be tried do not rise to the level of ineffective assistance of counsel merely because a different decision could have been made or a different result might have occurred. Ineffective assistance of counsel must be grounded in a record showing that the performance of counsel, in this case and under these circumstances, fell below the prevailing professional norms.

Here, Appellant offers very little analysis and few citations to the record to support his argument that counsel was ineffective. He fails to identify what the "professional norms" were with respect to each of those omissions or how counsel's performance was deficient in that regard. Furthermore, he offers no explanation as to how each claimed deficiency prejudiced the defendant other than to make a conclusory statement that a different, unspecified course of action "would have made a high probability of a different outcome" or a "high likelihood of changing the final outcome."

While this analysis alone would be sufficient to overrule Appellant's fourth issue; *Lawton v. State*, 913 S.W.2d 542, 558 (Tex. Crim. App. 1995) (holding that issues lacking substantive analysis are waived), we will briefly review one of the six alleged omissions in order to address the unfortunate, but unusual basis of the complaint.

By his fourth alleged omission, Appellant asserts his counsel was inefficient for failing to file a motion for new trial after it was discovered that a sitting juror had previously served on the grand jury that had indicted Appellant. Following the presentation of Rex's testimony, it came to the attention of the court that one of the jurors had served on the grand jury that heard Appellant's case when it was presented to the grand jury. The parties questioned the juror outside the presence of the other jurors. The juror said she did not realize she had served on that grand jury until she saw the photographs introduced into evidence during Rex's testimony and realized they looked "familiar." The juror said she did not remember anything else and that she had not talked to any of the other jurors about her experience on the grand jury or about the facts of this case. Because the trial court had seated an alternate juror, the court dismissed the juror from service *sua sponte* and the alternate juror proceeded in her place. Appellant argues his counsel provided ineffective assistance because she failed to move for a new trial after discovering the excused juror had previously served on the grand jury that returned the indictment in this case. The entirety of Appellant's argument and analysis on this point is "[t]he Defense did not move for a new trial when the Defense learned that one of the sitting jury members had also been on the Grand Jury for the same case and had already seen the evidence as presented to the Grand Jury." As the State notes, a juror who has served on the grand jury is not necessarily disqualified as a juror but is, instead, subject to a challenge for cause. *Webb v. State*, 232 S.W.3d 109, 113 (Tex. Crim. App. 2007) (citation omitted)

(holding it is not required that a juror who served on the grand jury be discharged because prior service on the grand jury merely raises a question of implied bias which may be challenged or forfeited). Here, the excused juror told the court she did not tell any of the other jurors about her service on the grand jury or about any of the facts she may have learned from her service on the grand jury and the trial court merely followed the procedure for the substitution of an excused juror. Given the facts of this case and the brevity of Appellant's analysis, we cannot say counsel's decision not to file a motion for new trial on this particular basis was ineffective assistance of counsel.

We overrule Appellant's final issue.

CONCLUSION

Having resolved each of Appellant's issues against him, we affirm the judgment of the trial court.

Patrick A. Pirtle<br>
Justice

Do not publish.